**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **BRIAN C. MORGAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:13-20212** |
| | ) | |
| **DAVID BALLARD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Respondent's Motion for Summary Judgment (Document No. 20.), filed on January 21, 2014, by Scott E. Johnson, Senior Assistant Attorney General. Petitioner filed his Responses on February 19, 2014, and July 18, 2014. (Document Nos. 24 and 29.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment.

**PROCEDURAL HISTORY**

On June 27, 2007 the Grand Jury of Jackson County, West Virginia, returned an Indictment against Petitioner, charging him with 5 counts of First Degree Sexual Assault in violation of West Virginia Code § 61-8B-3(a)(2) (Counts 1 - 5), and 10 counts of Possession of Child Pornography in violation of West Virginia Code § 61-8C-3 (Counts 6 - 15). State v. Morgan, Criminal Action No. 07-F-46 (Cir. Ct. Jackson Co. March 24, 2009); (Document No. 20-1.) Following a two day jury trial, Petitioner was convicted of all counts on March 19, 2008. (Document No. 20-10, pp. 509 - 512.) By Order entered on June 11, 2008, and subsequently corrected by Order entered on March 24, 2009, Petitioner was sentenced to a combined term of thirty-four (34) to seventy four (74) years of incarceration. (Document No. 20-2.)

On July 10, 2009, Petitioner, by counsel, J.L. Hickok, filed his Petition for Appeal with the West Virginia Supreme Court of Appeals, raising the following assignments of error:

1.  The Court erred in finding Petitioner's statement to the police to be voluntarily given and admissible into evidence since the setting for the statement was clearly custodial.

2.  The Court erred in finding Petitioner's statement to the police to be voluntarily given and admissible into evidence since Petitioner's diminished capacity to understand the officers led him to believe that they were trying to help him and not punish him.

3.  The Court erred in finding Petitioner's statement to the police to be voluntarily given and admissible into evidence since Petitioner's answers indicate that he was not voluntarily confessing.

4.  Use of Petitioner's involuntary statement against him was a denial of due process, and therefore, he is entitled to a new trial.

(Document No. 20-3.) The West Virginia Supreme Court refused Petitioner's Petition for Appeal by Order entered on October 29, 2009. (Document No. 20-4.)

On May 16, 2010, Petitioner, acting *pro se*, filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Jackson County. Morgan v. Ballard, Civil Action No. 10-C-67 (Cir. Ct. Jackson Co. Nov. 19, 2011); (Document No. 2, pp. 2 - 3 and Document No. 20-6, p. 12.) The Circuit Court appointed Matthew A. Victor as *habeas* counsel. (Document No. 20-6, p. 29.) On June 28, 2010, Mr. Victor filed an Amended *habeas* Petition on behalf of Petitioner. (Id.) Petitioner raised the following grounds for *habeas* relief:

1.  Ineffective Assistance of counsel:
    a.  Failure to seek an independent mental competency, criminal responsibility and diminished capacity evaluation;
    b.  Failure to protest petitioner's desire to testify;
    c.  Failure to hold a hearing on voluminous evidence which petitioner believed should have been excluded pursuant to Rule 404(b);
    d.  Counsel failed to recognize problems with petitioner's involuntary confession as addressed in Missouri v. Seibert, 542 U.S. 600 (2004);

e. Failure to raise the issue of prompt presentment;
f. Allowing Dr. Ralph Smith to perform the competency and criminal responsibility evaluation and draft the post-trial report;
g. Abandonment of petitioner's motion to examine the victim;
h. Failure to interview the victim;
i. Failure to challenge the seating of biased jurors;
j. Introduction of evidence of an additional assault upon the victim by the petitioner; and
k. Failure to argue that conviction of ten counts of possession of distribution and exhibiting of material depicting minors engaged in sexually explicit conduct, W. Va. Code § 61-8C-3, should have been limited to one count thereby violating the double jeopardy prohibition.

(Id.) An omnibus hearing was conducted on February 14, 2011. (Document No. 20-6, p. 12.) The Circuit Court heard testimony from D.W. Bostic, Petitioner's trial counsel. (Id., p. 30 After addressing the merits of the above claims, the Circuit Court denied Petitioner's Petition for Writ of *Habeas Corpus* by Judgment Order entered November 17, 2011. (Document No. 2, p. 3.)[1]

On January 3, 2012, Petitioner, by counsel, Matthew A. Victor , filed a Petition for Appeal from the Circuit Court's decision, raising the following grounds:

1. Ineffective Assistance of counsel:
   a. Failure to seek an independent mental competency, criminal responsibility and diminished capacity evaluation;
   b. Failure to protest petitioner's desire to testify, resulting in disastrous testimony;
   c. Failure to hold a hearing on voluminous evidence which petitioner believed should have been excluded pursuant to Rule 404(b) of the West Virginia Rules of Evidence;
   d. Failure to require notice of the alleged Rule 404(b) evidence;
   e. Failure to recognize problems with petitioner's confession as addressed in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004);
   f. Allowing Dr. Ralph Smith to perform the competency and criminal responsibility evaluation and draft the post-trial report;

[1] The undersigned has obtained a copy of Jackson County Circuit Court Judge Thomas C. Evan's November 17, 2011, Judgment Order and will make it a part of the record in this matter separately on the same date as the filing of this Proposed Findings and Recommendation.

g. Failure to raise the issue of prompt presentment;
h. Abandonment of petitioner's motion to examine the victim;
i. Failure to interview the victim'
j. Failure to challenge the seating of biased jurors;
k. Introduction of evidence of an additional assault upon the victim by the petitioner; and
l. Failure to argue that conviction of ten counts of possession of distribution and exhibiting of material depicting minors engaged in sexually explicit conduct, W. Va. Code § 61-8C-3, should have been limited to one count thereby exposing petitioner to double jeopardy.

(Document No. 20-7.). By Memorandum Decision entered on January 14, 2013, the West Virginia Supreme Court of Appeals affirmed the decision of the Circuit Court. (Id.); Morgan v. Ballard, 2013 WL 149602 (W.Va. Jan. 14, 2013).

On July 16, 2013, Petitioner, an inmate at Mount Olive Correctional Complex ["MOCC"], and acting *pro se*, filed his Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody and an Application to Proceed *in Forma Pauperis*.[2] (Document Nos. 1 and 2.) Petitioner alleges the following grounds for *habeas* relief:

1. The constitutional guarantee against double jeopardy, as secured by the Fifth Amendment to the Constitution of the U.S.A. was violated when petitioner was indicted, tried and convicted for ten violations of W. Va. Code § 61-8C-3 and when the Circuit Court imposed consecutive sentences.

2. Petitioner was denied meaningful and effective assistance of counsel as secured by the First, Sixth, Eighth and Fourteenth Amendments to the Constitution of the U.S.A. by the acts of commission and the acts of omission of William D. Bostic, defense counsel.

    (a) William T. Bosic failed to seek an independent mental competency, criminal responsibility and diminished capacity assessment.

[2] Because Petitioner acted *pro se* initially in this matter, the documents which he has filed in this case will be held to a less stringent standard than if they were prepared by a lawyer and therefore, they will be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

      (b) Mr. Bostic failed to protest petitioner's desire to testify.

(c) Mr. Bostic failed to demand a hearing on voluminous evidence which should have been excluded pursuant to Rule 404(b), West Virginia Rules of Evidence.

(d) Mr. Bostic failed to seek the suppression of the petitioner's statement for violation of the prompt presentment rule.

(e) Mr. Bostic allowed Dr. Ralph Smith to perform the competency and criminal responsibility evaluation and draft the post-trial report.

(f) Mr. Bostic abandoned petitioner's motion to examine the victim.

(g) Mr. Bostic failed to interview the petitioner's cousin, R.M.

(h) Mr. Bostic failed to challenge the seating of biased jurors.

(i) Mr. Bostic introduced evidence of an additional assault upon R.M. at his grandmother's residence by the petitioner.

(j) Defense counsel failed to contest the convictions for ten separate distinct violations of W. Va. Code § 61-8C-3, which should have constituted no more than one count to avoid a violation of the constitutional prohibition against double jeopardy.

(k) Defense counsel did not recognize an obvious constitutional problem with the petitioner's confession, the issue having been previously resolved by the U.S. Supreme Court in Missouri v. Seibert, 542 U.S. 600 (2004).

3. Petitioner was denied a fair and impartial jury trial as secured by the Sixth Amendment to the Constitution of the U.S. when the panel of prospective jurors included biased jurors.

4. Petitioner's constitutional right against self-incrimination as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. was violated by the admission at petitioner's trial of an involuntary confession.

5. Petitioner was denied due process of law as secured by the 5th and 14th Amendments to the Constitution of the U.S.A. and equal protection of the laws as secured by the 14th Amendment to the Constitution of the U.S.A. when petitioner was not promptly presented to the Magistrate.

6. Petitioner should never have been prosecuted under W. Va. Code § 61-8C-3,

> distribution and exhibiting of material depicting minors engaged in sexually explicit conduct, because the statute is so clearly imprecise on its face that the language cannot be saved by any reasonable construction.

(Document No. 2, pp. 4 - 14.) By Order entered on December 5, 2013, the undersigned denied Petitioner's Application to Proceed *in Forma Pauperis* (Document No. 2.) and directed Petitioner to pay the $5.00 filing fee. (Document No. 11.) Petitioner paid the $5.00 filing fee on December 17, 2013. (Document No. 15.) By Order entered on December 18, 2013, the undersigned directed Respondent to show cause, if any, why Petitioner's Petition should not be granted. (Document No. 16.)

On January 21, 2014, in response to the Court's Order, Respondent filed his Answer, Motion for Summary Judgment and Memorandum in Support thereof with Exhibits. (Document Nos. 19 - 21.) As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's Indictment as filed in State v. Morgan, Case No. 07-F-46 (Cir. Ct. Jackson Co.) (Document No. 20-1.); (2) A copy of the Amended Sentencing Order dated March 16, 2010 (Document No. 20-2.); (3) A copy of the Petitioner's Petition for Appeal as filed with the West Virginia Supreme Court of Appeal on July 31, 2009 (Document No. 20-3.); (4) A copy of the West Virginia Supreme Court of Appeal's Order refusing Petitioner's Petition for Appeal (Document No. 20-4.); (5) A copy of Petitioner's "Petition for Appeal from Denial of Petition for a Writ of Habeas Corpus" as filed with the West Virginia Supreme Court on January 3, 2012 (Document No. 20-5.); (6) A copy of the "Brief of Respondent State of West Virginia" as filed with the West Virginia Supreme Court of Appeals on March 19, 2012 (Document No. 20-6.); (7) A copy of the West Virginia Supreme Court's "Memorandum Decision" dated January 14, 2013 (Document No. 20-7.); (8) A copy of the transcript of the Competency Hearing as conducted on September 24, 2007 (Document No. 20-8.); (9) A copy of the

transcript of the Suppression Hearing as conducted on October 1, 2007 (Document No. 20-9.); (10) A copy of the Trial Transcript (Document No. 20-10.); (11) A copy of the Sentencing Transcript (Document No. 20-11.); (12) A copy of the Habeas Corpus Transcript (Document No. 20-12.); and (13) A copy of the Circuit Court's Competency Order dated August 16, 2007, and Psychiatric Evaluation dated April 13, 2007 (Document No. 20-13.).

On January 22, 2014, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's Motion for Summary Judgment. (Document No. 22.) On February 19, 2013, and July 18, 2014, Petitioner filed his Responses in Opposition. (Document Nos. 24 and 29.)

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a

question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[3] On this framework, consideration should be given to

---

[3] Title 28, U.S.C. Section 2254(e) provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder

Respondent's Motion for Summary Judgment.

**Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

**ANALYSIS**

**1. Double Jeopardy:**

In his Petition, Petitioner argues that "[t]he constitutional guarantee against double jeopardy,

---

would have found the applicant guilty of the underlying offense.

as secured by the Fifth Amendment to the Constitution of the U.S.A. was violated when petitioner was indicted, tried and convicted for ten violations of W.Va. Code § 61-8C-3 and when the Circuit Court imposed consecutive sentences." (Document No. 2, pp. 4 - 6.) Petitioner argues that "the ten counts in the indictment alleging possession of *any material visually portraying a minor engaged in any sexual explicit conduct* should have constituted only one unit of prosecution." (Id., p. 4.) Petitioner complains that the prosecutor based the indictment upon the allegation that "petitioner photographed a male cousin at least ten time between 2001 and June 2007 when his cousin was nude or in various stages of undress." (Id.) Petitioner acknowledges that "[t]he photographs were found at Petitioner's parent's home." (Id.) Petitioner argues that "W.Va. Code § 61-8C-3 is ambiguous as to the allowable unit of prosecution." (Id., p. 6.) Petitioner claims that "[i]f the statute does not clearly and unambiguously identify the unit of prosecution, then the courts must resolve any ambiguity in favor of the defendant under the rule of lenity to avoid turning a single transaction into multiple offenses." (Id.) Petitioner, therefore, concludes that "[a]ll photographs attributed to petitioner by the State constitute no more than one violation of the statute." (Id., p. 5.)

In his Motion for Summary Judgment, Respondent argues first that "[f]ederal habeas corpus does not lie to correct errors of State law." (Document No. 21, p. 3.) Respondent further claims that Petitioner's claim is not cognizable. (Id., p. 4.) Respondent contends that Petitioner's claim that consecutive sentences imposed based upon W.Va. Code § 61-8C-3 resulted in double jeopardy is an unreviewable question of State statutory construction. (Id.)

In Response, Petitioner argues that his convictions for child pornography violated his right against double jeopardy. (Document No. 24.)

The undersigned finds that Petitioner's above claim is without merit because there is no

evidence that the State *habeas* Courts' determinations were contrary to a reasonable application of federal constitutional law, or based on an unreasonable determination of facts. The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice in jeopardy of life or limb." Essentially, the Double Jeopardy Clause "protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 65 (1969). When consecutive sentences are imposed upon the conclusion of a single criminal trial, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). In Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed 306 (1932), the Supreme Court devised the following test to determine whether two offenses are sufficiently distinguishable to allow the imposition of multiple punishments: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. "If each [offense] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Iannelli v. Untied States, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1294, n. 17, 43 L.Ed.2d 616 (1975). "When a defendant is charged with multiple violations of the same statute arising from the same course of conduct, the court must consider '[w]hat Congress has made the allowable unit of prosecution.'" United States v. Shrader, 675 F.3d 300, 313 (4th Cir. 2012)(citation omitted), cert. denied, 133 S.Ct. 757, 184 L.Ed.2d 500 (2012); also see United States v. Weathers, 186 F.3d 948, 952 (D.C. Cir. 1999), citing Sanabria v.

United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)( "Where two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the *Blockburger* test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute.") In determining the "allowable units of prosecution," the Court should consider the statutory text and the intent of the legislature. United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); also see Ohio v. Johnson, 467 U.S. 493, 499, 104 S.Ct. 2536, 2540-41, 81 L.Ed.2d 425 (1984). "While the [*Blockburger*] test is traditionally used to determine whether a single course of conduct violates different statutory provisions, . . . courts have noted its utility in assessing whether multiple counts of the same statutory offense are multiplicitous." Shrader, 675 at 314. "If some amount of different proof was required for each offense, then the petitioner can constitutionally be convicted." Munday v. Ballard, 2013 WL 3990785, * 4 (N.D.W.Va. Aug. 2, 2013)(finding that "petitioner's conviction of four counts of attempted murder from the firing of a single bullet does not constitute double jeopardy"); McLaurin v. Ballard, 2008 WL 4498822 (S.D.W.Va. Sept. 30, 2008)(conviction of two counts of sexual assault did not violate prohibition against double jeopardy where there was evidence the petitioner penetrated the victim from behind, and then forced her to turn around, and penetrated her from the front).

In the instant case, Petitioner was convicted of ten counts of violating W.Va. Code § 61-8C-3 based upon his possession of ten photographs exhibiting either the buttock or penis of the child victim. West Virginia Code § 61-8C-3 provides, in pertinent part, as follows: "Any person who, with knowledge, sends or causes to be sent, or distributes exhibits possesses or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony."

The undersigned finds that Petitioner's conduct constituted ten separate offenses under the plain text of the statute. Petitioner does not dispute that he possessed ten photographs of the child victim. Each photograph was "material visually portraying a minor", and therefore there was "some amount of different proof" required for each conviction. Based upon the foregoing, the undersigned finds that Petitioner is not entitled to *habeas* relief on the above issue.

**2. Sufficiency of Evidence:**

In his Petition, Petitioner argues that the photos did not exhibit the alleged child victim engaging in sexual explicit conduct. (Document No. 2, p. 5.) Petitioner claims that the photographs of the alleged victim were "[m]ere photographs of a nude minor child, [which] does not fulfill the statutory prerequisites for a valid indictment or a valid conviction." (Id.)

In his Motion for Summary Judgment, Respondent contends that the above claim should be dismissed because it is unexhausted. (Document No. 21, p. 4.) Additionally, Respondent states that his claim is meritless and can be disposed of on its merits." (Id.) Respondent argues that none of the pictures "were taken in a context where a child would reasonably and innocently be exhibiting an uncovered buttock." (Id., p. 5.) Respondent claims that "[h]aving a victim on his hands and knees and/or having his shorts pulled down is not simply nudity, it screams of sexual connotation – that is "a sexual context." (Id.)

In Response, Petitioner argues that he "didn't remember what the pictures even were." (Document No. 24, p. 2.) Petitioner, however, contends that the pictures were "normal" and were not "explicit." (Id.)

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that state prisoners must exhaust available state

remedies prior to filing a Section 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); see also, McDaniel v. Holland, 631 F.Supp. 1544, 1545 (S.D.W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. See Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.), cert. denied sub nom., Matthews v. Moore, 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997), *overruled on other grounds by* United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles'' must be presented to the state court." Id. (quoting Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the state's highest court on either direct or collateral review. Id.at 844, 119 S.Ct. at 1732.

Reviewing the record liberally in favor of the Petitioner, the undersigned finds Petitioner's above claim of insufficient evidence is unexhausted. The record reveals that Petitioner neither asserted the above claim in his direct appeal or in his State *habeas* proceedings. Accordingly,

Petitioner's above claim should be dismissed. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Petitioner's claim.

The standards established by the United States Supreme Court in determining the sufficiency of the evidence to support the jury's verdict are set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The focus of the analysis set forth in Jackson[4] is whether "the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 307.

West Virginia Code § 61-8C-3 provides, in pertinent part, as follows: "Any person who, with knowledge, sends or causes to be sent, or distributes exhibits possesses or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony." West Virginia Code § 61-8C-1(c)(10) defines "sexually explicit conduct" as the "[e]xhibition of the genitals, pubic or rectal areas of any person in a sexual context." The record reveals that the jury viewed the photographs, which exhibited the child victim's penis or buttock. (Exhibit 10, pp. 298 - 305) The photographs showed the child victim with his shorts pulled down in a pool, a close up of the victim's buttocks with his shorts pulled down, or the victim on his hands and knees with his shorts pulled down. (Id.) Thus, the undersigned finds that the jury could reasonably conclude that photographs were taken in a sexual context. Accordingly, the undersigned finds that Petitioner is not entitled to *habeas* relief on the above issue.

---

[4]In *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), the West Virginia Supreme Court of Appeals adopted the analysis set forth in *Jackson* to determine whether the evidence was sufficient to support the jury's verdict.

**3. Ineffective Assistance of Counsel:**

The standards established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. Id. Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. Id. at 689, 104 S.Ct. at 2065. Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087, 113 S.Ct. 1069, 122 L.Ed.2d 372 (1993). Applying this standard, and based upon all of the evidence of record, the Court will address the merits of each of Petitioner's allegations of ineffective assistance of counsel as set forth above.

In his Petition, Petitioner merely sets forth a list of grounds claiming ineffective assistance of counsel. Construing Petitioner's Petition liberally, the undersigned finds that Petitioner intends to reassert the same arguments set forth in his appeal to the West Virginia Supreme Court of Appeals

regarding the denial of his State habeas petition.

**A. *Trial Counsel was Not Ineffective in Failing to Request an Independent Mental Competency, Criminal Responsibility, and Diminished Capacity Assessment.***

In his Petition, Petitioner argues that "William T. Bostic failed to seek an independent mental competency, criminal responsibility, and diminished capacity assessment." (Document No. 2, p. 7.) First, Petitioner argues that Dr. Smith had a history of "pro-prosecution tendencies." (Document No. 20-5, p. 37.) Second, Petitioner notes that trial counsel should have sought an independent evaluation based upon Dr. Smith's report "listing numerous mental conditions which had befallen the Petitioner over the years." (Id., pp. 37 - 38.) Petitioner contends that his "state of mind was critical to, and should have played an integral part of the foundation of his pre-trial, trial, and post-trial defense." (Id., p. 39.) Petitioner alleges that "there is a significant probability that additional evaluations would significantly affected the entire case and that, but for the trial counsel's inaction, the outcome of the proceedings would have been different." (Id., p. 40.)

In his Motion for Summary Judgment, Respondent argues that the "State habeas court's ruling is not contrary to, or an unreasonable application of, *Strickland*." (Document No. 21, pp. 6 - 8.) Respondent states that the State *habeas* court's finding "represents a thorough review of the facts and the law" and "there is no basis for affording the Petitioner any relief." (Id., p. 8.) Furthermore, Respondent argues that Petitioner is not entitled to *habeas* relief because there is no evidence that trial counsel's alleged "deficiency was prejudicial." (Id.)

In Response, Petitioner first argues that a second evaluation was necessary "because inmates in jail gave me false information to tell Dr. Ralph Smith resulting in Dr. Smith saying I should be incarcerated for a 'long time.'" (Document No. 24, p. 2.) Petitioner explains that he relied upon what "inmates in jail told him on how to answer" questions asked by Dr. Smith, and he "denied doing

anything to [the victim], [which] result[ed] in negative results." (Document No. 24, p. 2 and Document No. 29, p. 2.) Petitioner claims that he "thought it would help me and it didn't." (Document No. 29, p. 2.) Petitioner contends that trial counsel should have sought a second evaluation so that he could "change [his] answers." (Id.) Next, Petitioner states that "I believe I wasn't criminally responsible because I think I have diminished capacity where I don't fully comprehend the severity of my actions sometimes." (Document No. 24, p. 2.) Finally, Petitioner argues that Dr. Smith was not independent because "he is the one the court always picks." (Document no. 29, p. 2.)

The undersigned finds that Petitioner has failed to demonstrate a violation of the United States Constitution or rebut the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The State *habeas* Court determined that trial counsel was not unreasonable in failing to seek a second evaluation. The record reveals that Dr. Ralph Smith was found to be a qualified forensic evaluator who met the requirements as set forth in West Virginia Code § 27-6A-1. During the competency hearing, Dr. Ralph Smith testified that he diagnosed Petitioner with an "adjustment disorder with mixed anxiety and depressed mood and schizoid personality disorder." (Document No. 20-8, p. 5.) On cross examination, trial counsel questioned Dr. Smith regarding his finding that Petitioner had a "severe impairment in functioning, the configuration and clinical scale suggests a person with significant thinking and concentration problems, accompanied by prominent distress and dysphoria." (Id., p. 6.) Although Dr. Smith acknowledged that the foregoing is one of the things considered when determining whether someone is competent, Dr. Smith explained that "this is a psychological test result that is statistically showing certain things and that has to be correlated with how the person appears clinically." (Id., p. 7.)

Viewing Petitioner clinically, Dr. Smith found that Petitioner was able to "articulate adequately his history" and "he was anxious, but was fully oriented and showed adequate memory and good reality testing." (Id.) Thus, Dr. Smith concluded that he "did not see that these issues would interfere with [Petitioner's] competency." (Id., p. 8.) Dr. Smith, therefore, stated that it was his professional opinion that Petitioner understood "basically the roles of the courtroom participants; the judge, the jury, [defense counsel], and prosecutor" and that Petitioner was adequately capable of assisting defense counsel defend him." (Id.) During the omnibus hearing, trial counsel testified that he believed that Petitioner was criminally responsible and competent to stand trial based upon the results of the evaluation and based upon his "own meetings with [Petitioner]." (Document No. 20-12, pp. 14, 17, 21, 32.) Trial counsel explained that Petitioner "was able to present me with alternate theories of why he may have done what he did, with alternate theories of how to defend him." (Id., p. 17.) Trial counsel further testified that he had no reason to believe that Dr. Smith was not independent. (Id., p. 15.) Trial counsel explained that he had "done many evaluations with Dr. Smith" and "cross-examined him in court 10, 15 times," but never found him to be biased. (Id.) Thus, the undersigned finds that trial counsel was not unreasonable in failing to request a second evaluation because there no evidence that a second evaluation was justified. See United States v. Stanley, 550 Fed.Appx. 588, 591 (10th Cir. 2013)(finding that trial counsel's decision not to order a second evaluation was reasonable where the record did not suggest any reason for trial counsel to question the first evaluation). Additionally, there is no indication that Petitioner was prejudiced by the foregoing. There is no indication that a second evaluation of Petitioner would have resulted in a substantially different opinion, which would have changed the outcome of Petitioner's case. Based on the foregoing, the undersigned finds that Petitioner's above claim is without merit because there

is no evidence that the State *habeas* court's determination was contrary to a reasonable application of federal law or based on an unreasonable determination of facts.

**B. *Trial Counsel was Not Ineffective in Failing to Protest Petitioner's Desire to Testify.***

In his Petition, Petitioner argues that "William T. Bostic failed to protest Petitioner's desire to testify." (Document No. 2, p. 7.) In support, Petitioner argues that "[t]he record shows very little, if any, protestations from the trial counsel at the time of Petitioner's decision to take the stand." (Document No. 20-5, p 41.)

In his Motion for Summary Judgment, Respondent argues that the State habeas Court's "finding is not contrary to, nor is it an unreasonable application of *Strickland*." (Document No. 21, p. 9.) Respondent noted that the State *habeas* Court found there was "simply no factual basis for the argument propounded by the Petitioner that his trial defense counsel failed to protest Petitioner's desire to testify." (Id.) Respondent further argues that trial counsel cannot prevent a client from testifying at trial. (Id.)

In Response, Petitioner asserts that "trial counsel told me in my ear [that] taking the stand wouldn't hurt anything because I already looked bad enough the way it was." (Document No. 24, p. 3.)

The undersigned finds that Petitioner has failed to demonstrate a violation of the United States Constitution or rebut the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. As stated above, a determination on a factual issue made by the State Court is presumed correct and the burden is on the petitioner to rebut this presumption "by clear and convincing evidence." Tucker, 350 F.3d at 439. In the instant case, Petitioner merely concludes that trial counsel was ineffective in failing to protest his desire to testify. Petitioner, however, fails to

present "clear and convincing evidence" rebutting the State *habeas* Court's finding that trial counsel

failed to protest his desire to testify. A review of the trial transcripts reveals that trial counsel

informed the Court of the following regarding Petitioner's desire to testify:

> Your Honor, I advised Mr. Morgan on numerous occasions and again just now that he has a right to testify, that if he does, in fact, testify he will be cross-examined by the prosecuting attorney on any relevant fact in the case, not just limited to his direct examination questions and answers.
>
> I have also informed him that he has the right to remain silent, but if he chooses to remain silent and not testify, that the Court has the duty upon my request to instruct the jury that they cannot hold that against him for any purpose and cannot consider it for any purpose, and that the State has the total burden of proof, and that he has no burden to prove himself innocent, therefore, the jury cannot consider his refusal to testify. I have also informed him that the prosecutor cannot refer to it in the closing argument.
>
> He has told me that he believes it to be in his best interest to testify. I have explained to him that the only way he can get his unique version of the events here into evidence would be through his own testimony, so he has told me he has chosen to testify. And he has told me that before, he has told me that again now, so I assume unless he changes his mind before I call him as a witness that he intends to testify.

(Document No. 20-10, pp. 369-70.) The following dialog then occurred between the trial Court and

Petitioner:

> Q.    All right. Now, your lawyer has indicated that you have told him that you do wish to testify, take the oath, take the stand, and testify to your jury here; is that right?
>
> A.    Yes.
>
> Q.    Okay. Now, do you know and understand that if you testify, the prosecuting attorney is permitted to ask you questions?
>
> A.    Yes.
>
> Q.    Do you also understand that you have a constitutional right to remain silent, and that you have no duty to testify?
>
> A.    Yeah, yeah.
>
> Q.    Do you have any questions about any of that?

A.     Not that I am aware of, no.

Q.     Have you discussed this with your lawyer before today?

A.     Yeah. Yes.

Q.     I mean, this decision, do you understand it is your decision and not anybody else's?

A.     Yeah.

Q.     Do you understand that if you decide to testify today, and it doesn't go well for you in the trial, say you're convicted of one or more crimes, that you can't change your mind? Do you understand that? I mean, you can't change your mind and say, "Judge, I have changed my mind. I want another trial. I don't want to testify;" it's sort of a final thing, all right?

A.     Okay.

Q.     Anybody promised anything or threaten you in any way to induce you or cause you to give up your right to remain silent?

A.     I'm not really sure, exactly. I mean, I was nervous, and when I was nervous, I was under a lot of pressure, and so - -

Q.     You mean, today?

A.     I meant when I was making my statement to the police.

Q.     Talking to the police last summer?

A.     Yeah, yeah.

Q.     No, I'm talking today.

A.     Oh, today.

Q.     Has anybody promised you anything or threatened you that has caused you to tell the judge, "I want to testify. I want to give up my right to remain silent"?

A.     No, no.

Q.     Any threats or promises in that regard?

A. No.

Q. Okay. All right. Your choice is to testify then?

A. Yes.

(Id., pp. 371-73.) During the omnibus hearing, trial counsel testified that he advised Petitioner against testifying but "Mr. Morgan demanded to take the stand." (Document No. 20-12, pp. 23 - 24.) Trial counsel stated he "explained to Mr. Morgan numerous times that he should not, that I did not believe he would be able to withstand cross-examination . . . [b]ut he still believed - - and may still believe to this day - - that his explanation of what he said to the police is a truthful one that most folks would understand and believe." (Id., p. 24.) The record, therefore, supports a finding that trial counsel advised Petitioner numerous times against testifying, but Petitioner refused to accept his advice. Shendur v. United States, 874 F.Supp. 85 (S.D.N.Y. 1995)(finding counsel was not ineffective in allowing defendant to testify at defendant's own insistence). Additionally, Petitioner acknowledged prior to his testimony that he understood his right to remain silent. Petitioner confirmed that he wanted to testify in his defense and he was not being forced to testify against he wishes. Accordingly, Respondent is entitled to summary judgment on the above issue.

**C.** ***Trial Counsel was Not Ineffective Regarding the Rule 404(b) Evidence.***

In his Petition, Petitioner first argues that "Mr. Bostic failed to demand a hearing on voluminous evidence which should have been excluded pursuant to Rule 404(b), West Virginia Rules of Evidence." (Document No. 2, p. 7.) In support, Petitioner argues that the prosecution was allowed to introduce evidence of Petitioner's masturbation, anal sex with the alleged victim, additional uncharged sexual-assault conduct, threats and physical violence towards the child-victim, and harassment of the child victim. (Document No. 20-5, pp. 9, 15 - 16.) Petitioner further complains

that trial counsel was ineffective in failing to object to the prosecution's lack of notice of the Rule 404(b) evidence. (Document No. 2, p. 7.)

In his Motion for Summary Judgment, Respondent argues that the "State habeas court concluded that the evidence at issue did not fall within the confines of West Virginia Rule of Evidence 404(b) and, as such, the State had no obligation to provide notice of use." (Document No. 21, p. 10.) Respondent, therefore, contends that the "State habeas court could not find that counsel 'was ineffective for failing to object to admissibility of the testimony without a Rule 404(b) hearing.'" (Id.)

In Response, Petitioner contends that the prosecutor "added bad acts . . . that wasn't in my discovery and further prejudiced the jury after I was already done, off the stand, and lawyer failed to object." (Document No. 29, pp. 2 - 3.)

The undersigned finds that Petitioner has failed to demonstrate a violation of the United States Constitution or rebut the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. Rule 404(b) of the West Virginia Rules of Evidence prohibits the introduction of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he or she acted in conformity therewith. Evidence intrinsic to the offense charged in the indictment, however, does not fall within the restrictions of Rule 404(b). "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or other acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990). Intrinsic evidence is admissible when those facts come in as *res gestae* – as part of the proof charged in the indictment. Syllabus Pt. 7, State v. Dennis, 216 W.Va. 331, 607 S.E.2d 437

(2004)("Events, declarations, and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally consider *res gestae* and admissible at trial."); also see United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980)("One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence 'furnishes part of the context of the crime' or is necessary to a 'full presentation' of the case, or is so intimately connected with the explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its 'environment' that its proof is appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the res gestae or the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' (and is thus) part of the res gestae of the crime charged.")

In the instant case, the State *habeas C*ourt determined that evidence of Petitioner's masturbation, anal sex with victim, threats and physical violence towards the child victim, and harassment of the child victim and his siblings was intrinsic to the crimes and was not governed by Rule 404(b). The record reveals that the State *habeas* Court determined that the evidence was intrinsic because the it showed the "context of the crime," showed "the relationship of the victim to the Petitioner,""was necessary to a full presentation of the case," and it "complete[d] the story of the crime." As stated above, the findings by the State Court are presumed correct and the burden is on the Petitioner to rebut this presumption "by clear and convincing evidence." Tucker, 350 F.3d at 439. Petitioner merely concludes that trial counsel was ineffective by failing to object to the "other act" evidence based upon Rule 404(b). Petitioner, however, fails to present "clear and convincing evidence" rebutting the State *habeas* Court's finding that the "other acts" evidence

constituted intrinsic evidence, which was not prohibited by Rule 404(b). Thus, the undersigned finds that trial counsel did not act unreasonably in failing to object to the "other act" evidence pursuant to Rule 404(b). The undersigned further finds that Petitioner was not prejudiced by trial counsels' failure to present a non-meritorious argument regarding the admissible of the intrinsic evidence. Based on the foregoing, the undersigned finds that Respondent is entitled to summary judgment on Petitioner's foregoing claim.

***D. Trial Counsel was Not Ineffective Regarding Petitioner's Confession.***

In his Petition, Petitioner first asserts that "Mr. Bostic failed to seek the suppression of the Petitioner's statement for violation of the prompt presentment rule." (Document No. 2, p. 7.) In support, Petitioner argues that he was arrested or under a de facto arrest "at the alleged crime scene solely for the purpose of providing law enforcement officers with a confession." (Document No. 20-5, pp. 25 - 26.) Next, Petitioner contends that trial counsel was ineffective in failing to "recognize an obvious constitutional problem with the Petitioner's confession, an issue having been previously resolved by the U.S. Supreme Court in Missouri v. Seibert, 542 U.S. 600 (2004)." (Document No. 2, p. 7.) In support, Petitioner argues that "officers spoke to the Petitioner prior to advising him of his Miranda warnings." (Document No. 20-5, p. 21.) Petitioner states during a fifteen minutes span prior to being constitutionally cautioned, he made statements admitting that "things got out of hand." (Id., pp. 22.) Petitioner contends that he was in custody because law enforcement officers would not let "him out of their sight, including the embarrassing accompaniment of the nervous and mentally deficient Petitioner into a secluded location for the latter to relieve himself." (Id.)

In his Motion for Summary Judgment, Respondent first argues that the "State habeas court's factual findings negate any prompt present issue." (Document No. 21, pp. 10 - 12.) Specifically,

Respondent argues that "Petitioner has failed to show by clear and convincing evidence that the State habeas court's finding that '[a]ny delay came subsequent to the confession; there is no credible evidence that Petitioner was under arrest until after he confessed . . ., and the 'prompt presentment' rule was, therefore, not violated[,]' was wrong." (Id.) Next, Respondent argues that the State *habeas* Court correctly "addressed this issue and found that the Supreme Court's opinion in Missouri v. Seibert, 542 U.S. 600 (2004) did not apply." (Id., pp. 17 - 18.) Respondent notes that "Petitioner did not confess or reveal any material facts . . . prior to the *Miranda* warnings being read to the Petitioner." (Id., p. 17.) Respondent, therefore, contends "[t]here is no basis to find that counsel fell below a reasonable standard of professional competence in failing to raise *Sibert* as a basis to suppress the Petitioner's confession." (Id., p. 18.)

In Response, Petitioner continues to argues that "trial counsel failed to suppress my coerced confession." (Document No. 24, p. 4.) Petitioner argues that "I told my lawyer I wanted to recant what I told officers before a suppression hearing even occurred." (Id.) Petitioner argues that "a person should have a right to recant their testimony." (Document No. 29, p. 4.) Petitioner further claims that he "was not read [his] rights." (Document No. 24, p. 4.) Petitioner explains that when he agreed to talk to the officers, he was not advised of his right to remain silent or his right to counsel. (Id.) Petitioner stated that he "thought they were just talking to [him] where nothing really counted at that point in time." (Id.) Petitioner states that "[a]fter I was done talking to them, then they read me my rights as I was drove away from home." (Id.)

The undersigned finds that Petitioner has failed to demonstrate a violation of the United States Constitution or rebut the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The "prompt presentment rule contained in W.Va. Code 62-1-5, and Rule

5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered." Syl. Pt. 2, State v. Humphrey, 177 W.Va. 264, 351 S.E.2d 613 (1986). "Certain delays such as delays in transportation of a defendant to the police station, completion of booking and administrative procedures, recordation and transcription of a statement, and the transportation of a defendant to the magistrate do no offend the prompt presentment requirement." State v. Sugg, 193 W.Va. 388, 395-96, 456 S.E.2d 469, 476-77 (1995)(citation omitted). The undersigned has reviewed the transcripts from Petitioner's suppression hearing, transcripts of the interview of Petitioner by Lieutenant Anthony Boggs and Captain Herb Faber conducted on June 8, 2007, and the transcripts of Lt. Boggs and Capt. Faber's trial testimony. (Document No. 20-9 and Document No. 20-10, pp. 287 - 322, and pp. 342 - 81.) The undersigned finds no clear and convincing evidence that the State *habeas* Court's findings of fact and conclusion of law were erroneous as to the Petitioner's prompt presentment claim. The record confirms the State *habeas C*ourt's finding that the "police were with the Petitioner for less than an hour." The record reveals that the officers arrived at Petitioner's residence at about 11:10 a.m., began the recorded interview at 11:26 a.m, and concluded the recorded interview at 12:05 p.m. A review of the transcript of the interview further confirms the State *habeas* Court's finding that Petitioner did not confess until late in the interview. Based on the foregoing, the undersigned finds that Respondent is entitled to summary judgment on Petitioner's claim that trial counsel was ineffective in failing to claim a violation of the prompt presentment requirement.

In Missouri v. Siebert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), the Supreme Court held that when an officer purposefully interrogates a suspect without any *Miranda* warnings

in order to obtain a full confession first, then provides the suspect with full *Miranda* warnings and gets the suspect to repeat his confession, the post-warnings confession may be suppressed even if the first statement was made voluntarily. Missouri v. Siebert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). The Supreme Court explained that the "question-first, warn-second" tactic undermines the effectiveness of the *Miranda* warnings. Id. The Supreme Court focused on the calculated nature of the officer's two-step inquiry designed to obtain an admissible confession by "withholding *Miranda* warnings until after interrogating and drawing out a confession." Seibert, 542 U.S. at 609-10, 124 S.Ct. 2601(The police officer testified that he made a "conscious decision" to withhold *Miranda* warnings as an interrogation technique and the suspect's post *Miranda* confession was mostly a repeat of the pre-*Miranda* warning). The Supreme Court explained that a *Miranda* warning is not effective in a "question-first, warn-second" tactic because a suspect would not "think he had a genuine right to remain silent, let alone persist in so believing" after he already confessed and "police led him over the same ground again." Id. at 613, 124 S.Ct. at 2601.

The undersigned finds no clear and convincing evidence that there was a Siebert violation. The record contains no evidence supporting a finding that Lt. Boggs and Capt. Faber conspired to obtain a confession from Petitioner before administering the *Miranda* warnings by using the "question first" technique. Specifically, there is no indication that Lt. Boggs and Capt. Faber purposefully interrogated Petitioner without any *Miranda* warnings in order to obtain a full confession first, then provided Petitioner with his full *Miranda* warnings, and got Petitioner to repeat his confession. First, there is no indication that Petitioner confessed prior to the officers administering the *Miranda* warnings. The record reveals that Lt. Boggs and Capt. Faber directed Petitioner to their police car to be interviewed because they wanted to separate Petitioner from his

mother and the house that was being searched by other officers. Petitioner stepped away from the vehicle so he could urinate. Lt. Boggs spoke to Petitioner while he stepped away and told Petitioner why the officers were at his home. Petitioner then made a statement that "things got out of hand." (Document No. 20-10, pp. 379-81.) Once Petitioner got into the police car, the police officers administered the *Miranda* warnings and interviewed Petitioner. A review of the transcripts of the interview reveals that Petitioner initially denied any wrong doing and did not confess until well into the interview. (Document No. 20-9, pp. 24 - 54.) In Petitioner's post-*Miranda* confession, Petitioner admitted to putting his mouth on the child victim's penis and taking nude pictures of the child victim. (Id.) The undersigned finds that Petitioner's pre-*Miranda* statement that "things got out of hand" did not constitute a confession to first degree sexual assault or possession of child pornography. Thus, Petitioner has failed to present clear and convincing evidence rebutting the State *habeas* Court's finding that there was no Siebert violation. The undersigned, therefore, finds that trial counsel was not ineffective in failing to raise a non-meritorious argument. Accordingly, the undersigned finds that Respondent is entitled to summary judgment on Petitioner's claim that trial counsel was ineffective in failing to claim a Seibert violation.

***E. Trial Counsel was Not Ineffective by Failing to Object to Dr. Smith Conducting the Competency and Criminal Responsibility Report and Post-Trial Report.***

In his Petition, Petitioner argues that "Mr. Bostic allowed Dr. Ralph Smith to perform the competency and criminal responsibility evaluation and draft the post-trial report." (Document No. 2, p. 7.) In support, Petitioner argues trial counsel left "Petitioner at the tender mercies of Dr. Smith, a well-known, time-tested State's expert of extremely conservative views." (Document No. 20-5, p. 40.) Petitioner noted that Dr. Smith had "not only already declared the Petitioner competent to stand trial and criminally responsible for his action, but who [had] also already suspected the

Petitioner to 'have pedophilia' and recommended 'continued treatment for his adjustment problems.'" (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner has failed to rebut the findings by the State *habeas* Court. (Document No. 21, pp. 12 - 13.) Specifically, Respondent notes that the "State habeas court concluded that Dr. Smith was a 'qualified forensic evaluator" and meets all of the 'requirements' as set forth in West Virginia Code § 27-6A-1, and has recognized Dr. Smith as such many times before and since his post-trial evaluation of the Petitioner." (Id., p. 12.) Respondent argues that "simply disagreeing with the contents of the report or with the selection of Dr. Smith as an evaluator is not a valid basis for the Petitioner to receive any relief." (Id., pp. 12 - 13.) Respondent asserts that Petitioner has not presented "any legal basis or offered any evidence upon which relief could be consider." (Id., p. 13.)

In Response, Petitioner merely argues that "[a]fter trial, I wanted a second evaluation so I would cooperate and hopefully get leniency at sentencing." (Document No. 24, p. 4.)

The undersigned finds that Petitioner has failed to demonstrate a violation of the United States Constitution or rebut the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The State *habeas* Court determined that trial counsel was not unreasonable in allowing Dr. Smith to prepare a post-trial report. Pursuant to West Virginia Code § 62-12-1, a conviction sex offender must undergo a physical, mental, and psychiatric study and diagnosis prior to consideration for probation. As stated above, the State *habeas* Court determined that Dr. Smith was a "qualified forensic evaluator" who met the requirements as set forth in West Virginia Code § 27-6A. Petitioner has failed to produce any evidence contradicting that Dr. Smith was a qualified forensic evaluator. Trial counsel testified that he had "done many evaluations with

Dr. Smith" and "cross-examined him in court 10, 15 times," but never found him to be biased. (Id.) Thus, the record contains no indication that trial counsel was unreasonable in allowing Dr. Smith to prepare the post-trial report. An attorney's strategic decision is presumed reasonable and protected from second guessing under Strickland. Willaims v. Head, 185 F.3d 1223, 1242 (11th Cir. 1999)("Strategic decisions, such as the one [defense counsel] made not to request another mental evaluation of [the habeas petitioner], are virtually unassailable, especially when they are made by experienced criminal defense attorneys.") Additionally, there is no indication that Petitioner was prejudiced by the foregoing. There is no evidence that an evaluation by a different evaluator would have resulted in a substantially different opinion, which would have changed the outcome of Petitioner's case. Based on the foregoing, the undersigned finds that Respondent is entitled to summary judgment on Petitioner's claim that trial counsel was ineffective in allowing Dr. Smith to prepare the post-trial report.

### *F. Trial Counsel was Not Ineffective by Abandoning Petitioner's Motion to Examine the Victim.*

In his Petition, Petitioner argues that "Mr. Bostic abandoned Petitioner's Motion to Examine the victim."[5] (Document No. 2, p. 7.) In support, Petitioner argues that based upon his allegation that the child victim "was coached by his mother, the need for an independent assessment of R.M.'s mental capacity and possible influence was even more pronounced." (Document No. 20-5, p. 43.)

In his Motion for Summary Judgment, Respondent argues that Petitioner has failed to rebut the findings by the State *habeas* Court. (Document No. 21, pp. 13 - 14.) Specifically, Respondent contends that "[t]he State habeas court's conclusion that the 'Petitioner . . . failed to establish by a

[5] Petitioner also argues that "Mr. Bostic failed to interview the petitioner's cousin, R.M." (Document No. 2, p. 7.) The undersigned notes that J.M., the alleged child victim, was Petitioner's cousin, R.M..

preponderance of the evidence that he did not receive effective assistance of counsel in connection with the child victim not being evaluated for competency as a witness and with the Defense counsel not being able to interview the child victim prior to trial[,]' was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent." (Id.)

In Response, Petitioner merely argues that the child victim's "step mom . . . hated me since I was 18." (Document No. 24, p. 4.) Petitioner states that the child victim's step-mother "made up lies about me and turned by cousin against me." (Id.)

The undersigned finds that Petitioner has failed to demonstrate a violation of the United States Constitution or rebut the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The State *habeas* Court determined that trial counsel was not unreasonable in failing to interview or evaluate the competency of the child victim. The record reveals that a hearing regarding the competency of the child witness was scheduled based upon trial counsel's request. Trial counsel, however, requested and received copies of the video and audio recordings of the interviews of the child victim and his siblings. After viewing and listening to the interviews of the child-victim, trial counsel determined that a hearing on the competency of the child victim was unnecessary. During the omnibus hearing, trial counsel explained as follows:

> I believed [R.M.] [was] telling the truth. I believed [R.M.]'s stories matched with the things [Petitioner] was telling me, even though [Petitioner] was telling me he didn't really do them with criminal intent. And after having read the evidence and gone over the evidence, I did not believe that there was an issue with that.

(Document No. 20-12, p. 33.) Thus, the undersigned finds no indication that trial counsel was unreasonable in failing to interview or conduct a competency evaluation of the child victim. Additionally, there is no indication that Petitioner was prejudiced by the foregoing. There is no indication that an examination of the child victim would have resulted in the child victim changing

his testimony. The record reveals that all statements by the child victim were consistent and were in line with Petitioner's confession. Based on the foregoing, the undersigned finds that Respondent is entitled to summary judgment on Petitioner's above claim.

### *G. Trial Counsel was Not Ineffective by Failing to Challenge the Seating of Biased Jurors.*

In his Petition, Petitioner argues that "Mr. Bostic failed to challenge the seating of biased jurors." (Document No. 2, p. 7.) In support, Petitioner argues that trial counsel allowed Juror Robert Griffith, a father of four young children, and Don Barr, an individual who worked with R.M.'s step-mother, to be selected as jurors. (Document No. 20-5, p. 43.)

In his Motion for Summary Judgment, Respondent argues that Petitioner has failed to rebut the findings by the State *habeas* Court. (Document No. 21, pp. 14 - 15.) Specifically, Respondent notes that the State *habeas* Court concluded that Petitioner failed to produced any evidence to support his allegation that Mr. Barr and Mr. Griffith were biased. (Id.)

In Response, Petitioner continues to argue that Mr. Griffith was biased because he had children and Mr. Barr was biased because he worked with the victim's step-mother. (Document No. 24, p. 5 and Document No. 29, p. 3.) In support, Petitioner argues that "people always make personal comments about their own children judging sex crimes or acts." (Document No. 29, p. 3.)

The undersigned finds that Petitioner has failed to demonstrate a violation of the United States Constitution or rebut the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The State *habeas* Court determined that Jurors Barr and Griffith were unbiased and trial counsel was not unreasonable in failing to request that they be excluded from the jury panel. A review of the record fails to support Petitioner's claim that the above Jurors Griffith and Barr were biased. "A trial judge's determination of potential juror bias ... is a factual finding

entitled to the presumption of correctness contained in 28 U.S.C. § 2254(d)." Wainright v. Witt, 469 U.S. 412, 420, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). A review of the trial transcripts reveals that Jurors Barr and Griffith indicated that they could render a fair and unbiased decision based upon the evidence presented at trial. (Document No. 20-10, pp. 91 - 93 and 133 - 136.) Both Juror Barr and Griffith acknowledged that they understood that Petitioner was presumed innocent unless the State was able to prove him guilty beyond a reasonable doubt. (Id., p. 92 and 135-36.) Upon examination, Juror Griffith stated as follows:

> Q. Mr. Griffith, obviously the charges in this case involves sexual abuse of a child. Most of us have a reaction to that as soon as we hear it. Do you?
>
> A. I don't know really one way or the other. I have four children of my own.
>
> Q. Yeah.
>
> A. All I can say is, I can just give an honest opinion of it. You know, I really don't know.
>
> Q. You don't know whether it has an affect on you up front or not?
>
> A. I don't think it really would but I can't really answer for certain.
>
> Q. Okay. Do you understand that Mr. Morgan, by law, is presumed to be innocent of these charges?
>
> A. Yes, sir.
>
> Q. The State has a duty to prove him guilty?
>
> A. Yes, sir.

(Id., pp. 91 - 93 and 133 - 136.) Upon examination, Juror Barr stated as follows:

> Q. Mr. Barr, you raised your hand out here and said that you used to work with Alicia Morgan?
>
> A. Yes, sir.

Q. How was that experience for you?

A. How was it?

Q. Did you get along with her okay?

A. You know, just coworkers.

Q. Okay.

A. We didn't have no problems.

Q. You didn't develop a friendship or anything like that beyond work?

A. No.

Q. Are you going to feel like, since her . . . stepchild that's alleged to be the victim here - - are you going to feel like you need to find Mr. Morgan guilty in order to satisfy Alicia Morgan?

A. No, sir.

Q. Are you going to feel like that maybe you can't believe anything that happened here because Alicia Morgan is involved in it?

A. No, sir.

Q. So you don't really have - - it is not going to affect you either way?

A. No, sir.

(Id., pp. 91 - 92.) In view of the foregoing, the undersigned finds that Petitioner has failed to demonstrate how the above jurors were biased against him such that the jurors should have been excluded from the jury panel. Thus, his trial counsel was not ineffective in failing to seek the exclusion of Jurors Barr and Griffith. Accordingly, Respondent is entitled to summary judgment on the above claim.

***H. Trial Counsel was Not Ineffective by Introducing Evidence of an Additional Assault upon the Victim.***

In his Petition, Petitioner complains that "Mr. Bostic introduced evidence of an additional

assault upon [R.M.] at his grandmother's residence by the Petitioner." (Document No. 2, p. 7.)

In his Motion for Summary Judgment, Respondent argues that Petitioner has failed to rebut the findings by the State *habeas* Court. (Document No. 21, pp. 15 - 16.) Specifically, Respondent notes that the State *habeas* Court "found that counsel had a legitimate tactical reason for his question – to narrow the number of assaults, the time frame when the assaults occurred, and the location where the assaults took place." (Id.) Petitioner failed to address the above issue in his Response. (Document Nos. 24 and 29.)

The undersigned finds that Petitioner has failed to demonstrate a violation of the United States Constitution or rebut the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The petitioner must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), *abrogation on other grounds recognized*, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a petitioner to relief. See Beasley v. Halland, 649 F.Supp. 561, 566 (S.D.W.Va. 1986)(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); Jones v. Gomez, 66 F.3d 199, 204 - 05 (9th Cir. 1995)(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do want warrant habeas relief"). The undersigned finds that Petitioner's above complaint that trial counsel introduced evidence of an additional assault upon the child victim is insufficient. Petitioner merely concludes that trial counsel was ineffective. Petitioner fails to allege or produce any evidence disputing the findings of the State *habeas* Court. Therefore, Respondent is entitled to summary judgment on the above claim.

*I. Trial Counsel was Not Ineffective by Failing to Object to Petitioner's Ten Convictions of Possession of Child Pornography as a Violation of Double Jeopardy.*

In his Petition, Petitioner complains that "defense counsel failed to contest the convictions for ten separate distinct violations of W.Va. Code § 61-8C-3, which should have constituted no more than one count to avoid a violation of the constitutional prohibition against double jeopardy." (Document No. 2, p. 7.)

In his Motion for Summary Judgment, Respondent argues that Petitioner has failed to rebut the findings by the State *habeas* Court. (Document No. 21, p. 17.) Specifically, Respondent states that "the State habeas court concluded that West Virginia Code § 61-8C-3 provides for a unit of prosecution per picture."(Id.) Thus, Respondent contends that "counsel would not have been successful had counsel raised this issue." (Id.)

In Ground One, Petitioner argued that "[t]he constitutional guarantee against double jeopardy, as secured by the Fifth Amendment to the Constitution of the U.S.A. was violated when petitioner was indicted, tried and convicted for ten violations of W. Va. Code § 61-8C-3." As set forth above, the undersigned finds that Petitioner's ten convictions for violating W. Va. Code § 61-8C-3 do not constitute double jeopardy. Thus, trial counsel was not ineffective in failing to object to his convictions based upon double jeopardy. Respondent, therefore, is entitled to summary judgment upon the foregoing claim.

**4. Impartial Jurors:**

In his Petition, Petitioner argues that he "was denied a fair and impartial jury trial as secured by the Sixth Amendment to the Constitution of the U.S.A. when the panel of prospective jurors included biased jurors." (Document No. 2, pp. 8 - 9.) Petitioner complains that "[p]rospective jurors

who were selected to serve on the panel of twenty prospective jurors included five individuals who were employed by the State of West Virginia: Olive A. Abbott (Kanawha County Schools), Don Robert Barr (WV Dept. Of Highways), James Curtis Castro (Jackson County Board of Education), Michelle Lyn Neil Cox (Jackson County Schools), and Lisa L. Lanham (Jackson County Board of Education). (Id., p. 8.) Petitioner contends that "several prospective jurors had relatives who were employees of the municipal, state or federal agencies: the wife of Ray Alan Bright is a Deputy Court Clerk of Jackson County, the wife of John Earl Hamon is a therapist employed by Family Services, the husband of Lisa L. Lanham is employed by Kanawha County School System, the husband of Dr. Martha J. Spiker is an attorney whose firm represents Jackson General Hospital and the State Building Authority." (Id., pp. 8- 9.) Petitioner claims that "when the prospective juror or his immediate relatives are on the payroll of the State, or any subdivision of the State, or receiving retirement benefits or health care benefits or that type of thing, it creates a conflict of interest." (Id., p. 8.) Petitioner complains that trial counsel had to use four peremptory strikes to remove Abbott, Cox, Lanham, and Spiker. (Id., p. 9.) Additionally, Petitioner continues to argue that Juror Barr was biased because he was a co-worker of the child victim's step-mother and Juror Griffith was biased because he had four young children. (Id., pp. 8 - 9.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's above claim is only partially exhausted. (Document No. 21, pp. 19 - 21.) Respondent notes that "Petitioner has exhausted his claims as to jurors Barr and Griffith, i.e., that juror Barr should not have sat on the Petitioner's jury because juror Barr was a co-worker of the victim's mother and because juror Griffith equivocated about the impact of his being a father would have on his service as a juror in this case." (Id., p. 19.) Respondent, however, argues that these claims were disposed of by the State

*habeas* Court's ruling. (Id.) Respondent states that the remaining juror claims are unexhausted. (Id.) Although the remaining juror claims are unexhausted, Respondent states that the Court may deny these claims on the merits. (Id.) First, Respondent notes that Jurors Abbot, Cox, Lanham, and Spiker were potential jurors that did not sit as jurors in the case. (Id., p. 20.) Next, Respondent argues that even assuming that Jurors Barr and Casto "were employees of the State of West Virginia, the United States Supreme Court has said that mere government employment or receipt of pension benefits is insufficient to find implied bias." (Id.)

In Response, Petitioner continues to argue that Mr. Griffith was biased because he had children and Mr. Barr was biased because he worked with the victim's step-mother. (Document No. 24, p. 5 and Document No. 29, p. 3.) In support, Petitioner argues that "people always make personal comments about their own children judging sex crimes or acts." (Document No. 29, p. 3.)

***A. Jurors Barr and Griffith:***

The undersigned notes that Petitioner asserted the same allegations of bias by Jurors Barr and Griffith in his claim of ineffective assistance of counsel. For the reasons stated above, the undersigned finds Petitioner's claim that Jurors Barr and Griffith were biased to be without merit. Accordingly, Respondent is entitled to summary judgment on the above claim.

***B. Jurors Abbot, Cox, Lanham, Spiker, Bright, Hamon, Barr, and Casto:***

Petitioner argues that Jurors Abbot, Barr,[6] Casto, Cox, and Lanham were biased because they are employees of the State of West Virginia. Petitioner contends that Jurors Bright and Hamon were biased because they had relatives who were employed by the State of West Virginia. Reviewing the

[6] Petitioner asserts that Juror Barr was biased on two grounds: (1) Juror Barr and the child victim's step-mother were co-workers; and (2) Juror Barr was employed by the State of West Virginia.

record liberally in favor of the Petitioner, the undersigned finds Petitioner's above claims are unexhausted. The record reveals that Petitioner neither asserted the above claims in his direct appeal or in his State *habeas* proceedings. Accordingly, Petitioner's above claims should be dismissed.

Notwithstanding the foregoing, the undersigned will briefly consider the merits of Petitioner's claim. First, a review of the record reveals that the trial court examined each of the potential jurors and each juror acknowledged that they could be fair and give Petitioner the presumption of innocence. (Document No. 20-10, pp. 99 - 102, 115 - 118, 121 - 130, 133 - 136, 148 - 152, 158 - 161.) As stated above, "[a] trial judge's determination of potential juror bias ... is a factual finding entitled to the presumption of correctness contained in 28 U.S.C. § 2254(d)." Wainright, 469 U.S. at 420, 105 S.Ct. at 844.

Next, the undersigned notes that Abbot, Cox, Lanham, and Spiker were potential jurors, who did not sit as jurors in the underlying criminal trial. (Document No. 20-10, pp. 184-85.) It is well established that a claim that a jury was not impartial must focus on the jurors that ultimately sat on the jury – not on the potential jurors. Ross v. Oklahoma, 487 U.S. 81, 86, 108 S.Ct. 2273, 227, 101 L.Ed.2d 80 (1988). Additionally, the loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. Id., 487 U.S. at 88, 108 S.Ct. At 2278("We have long recognized that peremptory challenges are not of constitutional dimension."); also see Sloan v. Delo, 54 F.3d 1371 (8th Cir. 1995)(finding petitioner that claimed his constitutional rights were violated when trial counsel was forced to use peremptory challenges to strike members of the jury panel was not entitled to federal *habeas* relief based on the Sixth Amendment because petitioner did not claim that any of the jurors who actually sat were biased), cert. denied, 516 U.S. 1142, 116 S.Ct. 980, 133 L.Ed.2d 895 (1996).

Finally, the record reveals that Barr, Casto, Bright, and Hamon were selected as jurors. Petitioner's sole complaint with the above jurors is that they, or one of their relatives, are employees of the State of West Virginia. In Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), the Supreme Court noted that it "rejected a claim that a juror's employment with the Federal Government was a ground to find implied bias, but did not foreclose a finding of implied bias in more serious situations." Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), citing Dennis v. United States, 339 U.S. 162, 171-72, 70 S.Ct. 519, 94 L.Ed. 734 (1950). Even assuming that the above jurors, or the jurors' relatives, were employees of the State of West Virginia, the undersigned finds that mere employment with the State does not result in implied bias. See Sanders v. Norris, 529 F.3d 787, 793 (8th Cir. 2008)(finding county coroner who performed autopsies on murder victims not subject to dismissal on theory of implied bias); United States v. Polichemi, 219 F.3d 698, 704 (7th Cir. 2000)("[G]overnment employment alone is not, and should not be, enough to trigger the rule under which an employee is disqualified from serving as a juror in a case involving her employer"), cert. denied, 531 U.S. 993, 121 S.Ct. 485, 148 L.Ed.2d 458 (2000); United States v. Plache, 913 F.2d 1375, 1378 (9th Cir. 1990)("In the absence of any persuasive additional factors, [a juror's] employment status alone does not warrant a finding of implied bias."). Accordingly, the undersigned finds that Respondent is entitled to summary judgment on the above claim.

**5. Involuntary Statement:**

In his Petition, Petitioner contends that his "constitutional right against self-incrimination as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. was violated by the admission at petitioner's trial of an involuntary confession." (Document No. 2, p. 10.)

Petitioner contends that despite his "nonsensical rambling, indicating severe mental limitations, the officers never inquired of Petitioner's mental competence during a protracted interrogation in the back of a police cruiser." (Id.) Petitioner states that he has been diagnosed with attention deficit disorder and that he suffered a traumatic head injury when he was 19 years old. (Id.) Petitioner explains that as late as 2002, he was treated for "depression, suicidal ideation, anger, schizoaffective disorder, schizophrenia, and auditory hallucinations." (Id.) Petitioner, therefore, concludes that he was incapable of giving a voluntary statement. (Id.)

In his Motion for Summary Judgment, Respondent argues that "Petitioner is in error as this ground affords him no basis for habeas relief." (Document No. 21, pp. 21 - 22.) Specifically, Respondent argues that "[m]ental illness does not make a statement involuntary per se." (Id., p. 21.) Respondent contends that "[v]oluntariness 'depends on the absence of police overreaching." Respondent asserts that there is no evidence of coercive police activity in the instant case. (Id., pp. 21 - 22) Additionally, Respondent notes that the trial Court found no evidence that Petitioner was impaired or incompetent such that he did not understand his rights. (Id., p. 22.)

In Response, Petitioner first argues that he was not read his *Miranda* rights until after his interrogation was concluded. (Document No. 24, p. 4.) Petitioner contends that prior to the interrogation, the officers merely "asked me if I would sign a rights advisement form and said that means I volunteered to talk to them." (Id.) Petitioner states that "after I was done talking to them, then they read me my rights as I was driving away from home." (Id.) Petitioner acknowledges that he "was not coerced," but contends his statement was involuntary because [he] was exhausted and decided to tell them something they accepted to believe." (Document No. 29, p. 4.)

The Fifth Amendment protects individuals from compelled self-incrimination. U.S. Const.

Amend V. Thus, if a person in custody is to be subjected to interrogation, he must first be informed "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A valid waiver of *Miranda* rights involves two components: (1) the waiver must have been voluntary, and not the result of any coercion by law enforcement officers; and (2) the waiver must have been knowingly and intelligently made. See Colorado v. Spring, 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987). When making this determination, the Court should consider the "totality of the circumstances surrounding the interrogation." Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)(citation omitted).

Viewing Petitioner's Petition liberally, the undersigned finds that he appears to be challenging the validity of his *Miranda* waiver as involuntary and not knowing and intelligent. Therefore, the undersigned will consider both components.

***A. Voluntariness Prong:***

A statement "is involuntary under the Fifth Amendment only if it is 'involuntary within the meaning of the Due Process Clause." United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997), cert. denied, 522 U.S. 874, 118 S.Ct. 192, 139 L.Ed. 130 (1997)(A police officer is prohibited from coercing a defendant into making an involuntary or coerced statement.).The Court must look to the "totality of the circumstances," including the "characteristic of the defendant, the setting of the interview, and the details of the interrogation" in determining whether the individual was unduly influenced and whether the confession was voluntary. United States v. Pelton, 835 F.2d 1067, 1071

(4th Cir. 1987), cert. denied, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). Under the totality of the circumstances, a statement is involuntary if the accused's will was 'overborne' or his 'capacity for self-determination critically impaired." Id. The United States Supreme Court has recognized that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986.)

In his Petition, Petitioner appears to argue that his statement was involuntary based upon his mental condition. (Document No. 2, p. 10.) A mental condition alone, however, cannot render a waiver involuntary. United States v. Cristobal, 293 F.3d 134, 141 (4th Cir. 2002), cert. denied, 537 U.S. 963, 123 S.Ct. 396, 154 L.Ed.2d 319 (2002). As explained above, a statement cannot be considered involuntary unless there is "coercive police activity." Connelly, 479 U.S. at 167, 107 S.Ct. at 522. In his Response, Petitioner acknowledges that he "was not coerced, [he] was exhausted and decided to tell them something they accepted to believe." (Document No. 29, p. 4.) Although Petitioner contends he was exhausted, a review of the record reveals that the interrogation lasted less than an hour. Additionally, a review of the transcript reveals that Petitioner was not so exhausted that his will was overborne. The record reveals that Petitioner continuously denied questions concerning the child victim's allegation that Petitioner performed oral sex on the victim on at least fifty occasions and that Petitioner engaged in anal sex with the victim. (Document No. 20-9, pp. 38, 41 - 46.) Furthermore, Petitioner acknowledged during the interview that the officers had not threatened him in any way and had been cordial with him. (Id., p. 52.) Based upon the foregoing, the undersigned finds that Petitioner's waiver of his *Miranda* rights was voluntary.

***B. Knowing and Intelligent Prong:***

A knowing and intelligent waiver of *Miranda* rights occurs when the waiver is made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421, 106 S.Ct. at 1141. The Constitution, however, "does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." Colorado, 479 U.S. at 574, 107 S.Ct. at 857(citation omitted). The Court should consider the totality of the circumstances when determining whether an individual's waiver was knowing and intelligent. In United States v. Robinson, 404 F.3d 850 (4th Cir. 2005), the Fourth Court focused on whether the suspect expressed to the officers "an inability to understand the rights as they were recited" and whether the record contained any indication that the suspect did not understand his rights. United States v. Robinson, 404 F.3d 850, 860-61 (4th Cir. 2005), cert. denied, 546 U.S. 916, 126 S.Ct. 288, 163 L.Ed.2d 253 (2005). Specifically, the Fourth Circuit explained as follows:

> In cases involving defendants with low intellectual ability, the knowingness of the waiver often turns on whether the defendant expressed an inability to understand the rights as they were recited. In United States v. Rosario-Diaz, 202 F.3d 54 (1st Cir. 2000), the First Circuit upheld the denial of a suppression motion involving a woman with an IQ in the 70s and no prior experience with the criminal justice system because the officers testified that the woman understood the questions and rights. Id. at 69. See also United States v. Male Juvenile, 121 F.3d 34, 40 (2nd Cir. 1997)(finding waiver was knowing for juvenile with attentional and learning disabilities because juvenile indicated that he understood the rights as they were being read to him).

Id. at 861.

In the instant case, Petitioner appears to argue that his *Miranda* waiver was not knowing and intelligent because he suffers from Attention Deficit Disorder, depression, suicidal ideation, anger, schizophrenia, and auditory hallucinations. (Document No. 2, p. 10.) Petitioner further contends that

Dr. Smith's evaluation stated that the "clinical scale suggests a person with significant thinking and concentration problems." (Id.) A review of Dr. Smith's evaluation report reveals that Petitioner scored average on his verbal comprehension, perceptual organization, working memory, and processing speed. (Document No. 20-13, p. 7.) Additionally, it was determined that Petitioner had an IQ of 100. (Id.) Under the "Clinical Features" section, Dr. Smith" noted that "[t]he configuration of the clinical scales suggests a person with significant thinking and concentration problems, accompanied by prominent distress and dysphoria." (Id., p. 10.) Despite the forgoing, Dr. Smith found Petitioner to be competent. (Id., p. 13.) During the competency hearing, Dr. Smith explained that "this is a psychological test result that is statistically showing certain things, and that has to be correlated with how the person appears clinically." (Document No. 20-8, p. 7.) Dr. Smith testified that "having spent an hour or so with [Petitioner] and going over his history, I found that he was able to articulate adequately his history. He was anxious, but fully oriented and showed adequate memory and good reality testing." (Id., pp. 7 - 8.) Additionally, Dr. Smith's "Conclusions from Psychological Testing" was as follows:

> Mr. Morgan is functioning intellectually in the Average range and reading at a 9th grade level. He is currently showing a marked amount of emotional distress. Personality dysfunction was apparent on test protocol. Anxiety was markedly present in test results. Depression was pronounced in the test protocol. A formal thought disturbance was not present. He was normal in energy level. He demonstrated adequate concentration ability. There was evidence of intermittent problems with impulse control. Anger is poorly controlled. Somatization is significant. Based on the assessment material, suicidal or self-destructive ideation may be present and should be considered. Evidence for the likelihood of homicidal or assaultive ideation was not present. He is inappropriate in self-evaluation. Interpersonal relationships are likely characterized by withdrawal, suspiciousness, and mistrust.

(Document No. 20-13, p. 12.) The undersigned finds that Dr. Smith's clinical findings of "significant thinking and concentration problems" does not prove that Petitioner's *Miranda* waiver was not

knowing and intelligent. Furthermore, the mere fact that Petitioner had Attention Deficit Disorder, depression, suicidal ideation, anger, schizophrenia, and auditory hallucinations does not support a finding that his *Miranda* waiver was not knowing and intelligent. See Robinson, 404 F.3d at 861(finding that a "below average I.Q. does not make [an individual] per se incapable of intelligently waiving his rights").

Based upon a review of the record, the undersigned finds no indication that Petitioner's waiver was not knowing and intelligent. A review of the transcript of the interview does not reveal "nonsensical rambling [by Petitioner], indicating severe mental limitations." There is no indication that Petitioner did not understand his rights. Additionally, Petitioner acknowledged during the interview that he understood "what was going on" and that he understood his *Miranda* rights. (Document No. 20-9, pp. 52 - 53.) Cpt. Faber testified that during the interview, Petitioner "seemed nervous[,] upset, [and] at times he seemed angry," but he was oriented to time and place." (Document No. 20-10, pp. 353 and 364.) Cpt. Faber testified that Petitioner was advised of his *Miranda* rights prior to the interrogation and Petitioner acknowledged that he understood his rights. Cpt. Faber explained that Petitioner signed a "right advisement statement, a not-under-arrest rights advisement statement." (Id., p. 350.) Specifically, Cpt. Faber testified as follows:

Q. And how did you go over this document with him?

A. I read the statement to him verbatim. I asked him - - and it lists and explains all of his rights to him. And I asked him if he understood his rights and he said that he did; if he was willing to speak with us, I read a - - what is called a waiver of rights, a paragraph to him which is as if he is saying it, and I explained that to him, and he said that he understood that and agreed with that, and - -

Q. Well, let me ask you: In terms of the rights you advised him of, did you advise him that he didn't have to speak with you?

A.      Yes.

Q.      Did you advise him that he could ask for an attorney.

A.      Yes.

Q.      Did you advise him he was not under arrest and he could leave at any time?

A.      Yes.

Q.      Did you advise him that anything he said could be used against him in court?

A.      Yes.

Q.      Did you tell him that if he couldn't afford an attorney, he could be appointed an attorney?

A.      Yes.

Q.      And did you tell him at any time when he was talking to you, he could stop the interview and stop talking to you?

A.      Yes.

Q.      Did he indicate to you that he understood his rights?

A.      Yes.

Q.      Did you ask him what type of schooling he finished?

A.      Yes.

Q.      What did he tell you?

A.      He said the 12th grade.

Q.      Did you ask him if he could read and write?

A.      Yes.

Q.      What was his reply?

A.      He said, "Yeah."

Q. Okay. Did you ask him to execute that document?

A. Yes.

Q. And did he do so?

A. He did.

(Id., pp. 350-52.) The record reveals that Petitioner was fully advised of his *Miranda* rights and there is no indication that Petitioner did not understand those rights. The undersigned, therefore, finds that Petitioner's *Miranda* waiver was knowing and intelligent. Accordingly, Respondent is entitled to summary judgment as to above Petitioner's claim.

**6. Prompt Presentment Violation:**

In his Petition, Petitioner contends that he "was denied due process of law as secured by the 5th and 14th Amendments to the Constitution of the U.S.A. and equal protection of the laws as secured by the 14th Amendment to the Constitution of the U.S.A. when petitioner was not promptly presented to the Magistrate." (Document No. 2, pp. 11 - 12.) Specifically, Petitioner states that "[i]n West Virginia, state law and procedural rules impose a duty upon the arresting officer to present an individual to a magistrate when an accused is placed under arrest." (Id., p. 11.) Petitioner contends that he "was in police custody with sufficient probable cause to warrant an arrest prior to Deputy Faber and Officer Boggs eliciting the incriminating admission from petitioner." (Id.) Petitioner, therefore, contends that the prompt presentment rule was violated. (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's claim "is not cognizable in federal habeas corpus since it does not raise a claim of a deprivation of federal rights." (Document No. 21, p. 22.) Petitioner failed to address the above issue in his Response. (Document Nos. 24 and 29.)

The undersigned notes that Petitioner asserted the same allegation of a prompt presentment violation in his claim of ineffective assistance of counsel. For the reasons stated above, the undersigned finds Petitioner's claim of a prompt presentment violation to be without merit. Accordingly, Respondent is entitled to summary judgment on the above claim.

**7. Statute Not Unconstitutionally Vague:**

In his Petition, Petitioner argues that he "should never have been prosecuted under W. Va. Code § 61-8C-3, Distribution and exhibiting of material depicting minors engaged in sexually explicit conduct, because the statute is so clearly imprecise on its face that the language cannot be saved by any reasonable construction." (Document No. 12 - 14.) Petitioner argues that the "statutory language in W. Va. Code § 61-8C-3 (1988) is so nebulous that it grants uncontrolled power to the prosecuting attorneys to fracture a single violation of the law into multiple violations and necessarily causes decision making on an ad hoc and subjective basis with the attendant dangers of arbitrary and discriminatory application." (Id., p. 13.) Petitioner continues to claim that "[a]ll photographs attributed to petitioner by the State constitute no more than one violation of the statute." (Id.) Petitioner states that the "challenged statute does not define the phrase 'any material' and it does not define what constitutes the allowable unit of prosecution." (Id.)

In his Motion for Summary Judgment, Respondent contends that Petitioner has failed to rebut the findings of the State *habeas* Court. (Document No. 21, pp. 22 - 23.) Respondent notes that the State *habeas* Court "found that the term 'any material' means each depiction constitutes a separate offense, especially in light of policy underlying the statute – to protect children." (Id., p. 23.) Thus, Respondent argues he is entitled to summary judgment. (Id.) Petitioner failed to address the above issue in his Response. (Document No. 24 and 29.)

A criminal statute complies with due process if the statute "provide[s] adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal."[7] United States v. Hsu, 364 F.3d 192, 196 (4th Cir. 2004). Thus, a criminal statute must "define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." Skillings v. United States, 561 U.S. 358, 130 S.Ct. 2896, 2927, 177 L.Ed.2d 619(2010), quoting Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); also see United States v. Williams, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)("A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."). When considering the above standards, the Court should "consider whether a statute's prohibitions 'are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." Shrader, 675 F.3d at 310(citation omitted)(noting that 'perfect clarity and precise guidance have never been required'"). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what the fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent' – wholly subjective judgments without statutory

---

[7] Individuals alleging a criminal statute to be unconstitutionally vague must assert an "as-applied" challenge. *United States v. Sun*, 278 F.3d 302, 209 (4th Cir. 2002)(Claims of statutory vagueness that do not implicate the First Amendment must be examined in the light of the facts of the case at hand.) Therefore, facial vagueness challenges to criminal statutes are allowed only when the statute implicates First Amendment rights. *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003), *cert. denied*, 541 U.S. 981, 124 S.Ct. 1896, 158 L.Ed.2d 482 (2004).

definitions, narrowing context, or settled legal meaning." United States v. Williams, 553 U.S. 285, 128 S.Ct. at 1846; also see United States v. National Dairy Products Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963)(A "strong presumptive validity" attaches to Acts of Congress and "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.") "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 fn. 7, 102 S.Ct. 1186, 1191 fn.7, 71 L.Ed2d 362 (1982), quoting Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

The undersigned finds that Petitioner's above claim is without merit. West Virginia Code § 61-8C-3 provides as follows:

> Any person who, with knowledge, sends or causes to be sent, or distributes, exhibits, possesses or displays or transports *any material* visually portraying a minor engaged in any sexual explicit conduct is guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not more than two years, and fined not more than two thousand dollars.

W. Va. Code § 61-8C-3(emphasis added). Petitioner contends that the above statute is vague because it fails to define "any material."[8] "[W]hen a statute fails to provide an explicit definition, we may resort to ordinary meaning and common sense, considering whether the statute 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." Shrader, 675 F.3d at 310, citing United States v. Petrillo, 332 U.S. 1, 8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). Petitioner appears to contends that he had no way of knowing that the

[8] To the extent Petitioner is arguing that the statute does not define the allowable unit of prosecution, this claim is addressed above in consideration of Petitioner's double jeopardy claim.

photographs of the child victim would constitute "any material" resulting in violations of W. Va. Code § 61-8C-3. Resorting to the "ordinary meaning and common sense," the undersigned finds that photographs constitute "any material." See Shrader, 675 F.3d at 310 (finding that a statute is not vague "simply because it does not include the most elaborate or most specific definitions possible.") As stated above, a criminal statute complies with due process if the statute provides adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal. In the instant case, Petitioner knew, or should have known, that a photograph constituted "any material" pursuant to W.Va. Code § 61-8C-3. The undersigned, therefore, finds that W.Va. Code §§ 61-8C-3 defined the criminal offense with sufficient definiteness that Petitioner could understand what conduct was prohibited and in a manner that did not encourage arbitrary and discriminatory enforcement. Accordingly, Petitioner is not entitled to *habeas* relief on the above issue.

**8.    Imprisonment in the Penitentiary:**

In his Petition, Petitioner argues that his sentence should be overturned because W.Va. Code § 61-8C-3 provides that upon conviction, the defendant "shall be imprisoned in the penitentiary." (Document No. 2, p. 13.) Petitioner states that the "West Virginia Penitentiary officially closed on April 3, 1995." (Id.) Petitioner asserts that the "Legislature never revised the statute to mandate confinement in any of the state's correctional facilities." (Id.) Petitioner concludes that "[i]n the absence of a penitentiary, there can be no lawful confinement upon conviction for this offense." (Id.)

In his Motion for Summary Judgment, Respondent contends that the "location of where a sentence is to be served is not part of the sentence." (Document No. 21, p. 23.) Respondent argues that a "sentence is comprised of the length of incarceration (and any fines) and does no implicate the location of incarceration." (Id., pp. 23 - 24.) Finally, Respondent notes that Petitioner has no

constitutional right to be housed at any particular prison or jail. (Id., p. 24.) Petitioner failed to address the above issue in his Response. (Document Nos. 24 and 29.)

The undersigned finds that Petitioner's foregoing claim is without merit. Petitioner does not argue that the length of his sentence is unconstitutional, but contends that the location of his incarceration is improper. Federal *habeas* relief is available to a State prisoner only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002). It is well established that an inmate has no constitutional right to be incarcerated in any particular institution. See Meachum v. Farno, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); also see Hinton v. Federal Bureau of Prisons, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security classification."). The undersigned, therefore, finds that Respondent is entitled to summary judgment on the above ground.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment (Document No. 20.), **DISMISS** Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 2.), and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have seventeen days (fourteen days, filing

of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and to counsel of record.

Date: August 12, 2014.

R. Clarke VanDervort
United States Magistrate Judge