IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRIAN C. MORGAN,

          Plaintiff,

v.                                           CIVIL ACTION NO.   2:13-cv-20212

DAVID BALLARD,
Warden, Mount Olive Correctional Complex,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the following: (1) Petitioner's "Motion to Re-open Judgment Rule 60(b)(6) and for Certified Question to the Fourth Circuit of Appeals, and Appointment of Counsel," (ECF No. 50); and (2) Petitioner's "Motion for Leave to File Amended Motion for Relief of Judgment Rule 60(b)(6), Motion for Briefing Scheduling Order, and Motion for Certified Questions," (ECF No. 51). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, these motions were referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for further consideration and resolution on December 17, 2021. (ECF No. 52.) Magistrate Judge Aboulhosn filed a proposed findings and recommendation for disposition ("PF&R") on February 22, 2022, recommending that the Court dismiss Petitioner's Rule 60(b) Motions for lack of jurisdiction and deny Petitioner's motions for briefing schedule

1

and certified questions as moot.[1] (*See* ECF No. 53.) After the Court extended the time to file objections, (ECF No. 56), Petitioner filed timely objections[2] to the PF&R. (ECF Nos. 57, 58).

For the reasons discussed herein, the Court **OVERRULES** Petitioner's objections, (ECF Nos. 57, 58), **ADOPTS** the PF&R, (ECF No. 53), **DISMISSES** Petitioner's Rule 60(b) motions, (ECF Nos. 50, 51), for lack of jurisdiction, and **DENIES AS MOOT** Petitioner's motions for briefing schedule and certified questions, (ECF Nos. 50, 51).

## I. BACKGROUND

A detailed recitation of the extensive facts of this action can be found in Magistrate Judge Aboulhosn's PF&R, (ECF No. 53), and therefore need not be repeated here. The Court will provide a discussion of any relevant facts as necessary throughout this opinion to resolve Petitioner's objections.

## II. STANDARD OF REVIEW

A. *Review of Magistrate Judge's Findings and Recommendations*

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general

---

[1] Petitioner's motion for appointment of counsel was denied in a separate order entered on February 22, 2022. (*See* ECF No. 54.)

[2] Petitioner filed a "Motion for Leave to Supplement Objections to Add Additional Points and Brief and Support," on March 14, 2022. (ECF No. 58.) Because this motion and additional objections were filed within the extended timeline the Court provided to object to the PF&R, the Court **GRANTS** Petitioner's motion, (ECF No. 58), and considered his additional objections.

2

and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In reviewing those portions of the PF&R to which Petitioner has objected, this Court will consider the fact that Petitioner is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

B. *Motion for Relief from Judgment*

"A movant seeking relief from a judgment under Rule 60(b) must make a threshold showing of 'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" *Dowell v. State Farm Fire and Cas. Auto Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). After a movant has made this showing, the movant must then satisfy one of the six specific grounds for relief enumerated in 60(b)(1)–(6). *Id.* (citing *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)). Under Federal Rule of Civil Procedure 60(b), a court may relieve a party from a final judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Although a Court may grant relief based on any of these grounds, the Fourth Circuit has held that a Rule 60(b) motion "is not a substitute for a timely and proper appeal." *Dowell*, 993 F.2d at 48 (citing *Ackermann v. United States*, 340 U.S. 193, 198 (1950)). Additionally, the

Fourth Circuit has instructed that the "catchall reason" in (b)(6) should "be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)–(5). *Aikens v. Ingram*, 652 F.3d 496, 500–501 (4th Cir. 2011) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n. 11 (1988)). Further, in order to obtain relief under section (b)(6), the motion must "be filed on 'just terms' and within 'a reasonable time.'" *Id.* at 501.

*C. Rule 60(b) Motions and the Antiterrorism and Effective Death Penalty Act of 1996*

While Rule 60(b) applies to federal civil litigation generally, federal habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020); 28 U.S.C. § 2244(b). AEDPA strictly limits the ability of federal prisoners to file more than one habeas petition. *Banister,* 140 S. Ct. at 1704 (citing *Magwood v. Patterson*, 561 U.S. 320, 333–334 (2010)); 28 U.S.C. §2244(b). Specifically, "[t]o file a second or successive application in a district court, a prisoner must *first* obtain leave from the court of appeals based on a 'prima facie showing' that his petition satisfies the statute's gatekeeping requirements. *Banister,* 140 S. Ct. at 1704 (emphasis added) (citing 28 U.S.C. § 2244(b)(3)(C)). If a movant files a second or successive petition in the district court without first seeking authorization from the court of appeals, the district court must dismiss the petition for lack of jurisdiction. *See United States v. Joy*, 585 F. App'x 33, 34 (4th Cir. 2014); *Burton v. Stewart*, 549 U.S. 147, 157 (2007). And, importantly, a habeas petitioner cannot avoid the second or successive gatekeeping mechanism of the AEDPA by raising habeas claims in a filing that he designates as a Rule 60(b) motion. *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005).

III.    DISCUSSION

4

Magistrate Judge Aboulhosn recommended dismissing Petitioner's motions to reopen for lack of jurisdiction because they are "in substance a successive habeas petition," as Petitioner moved to reopen his case in order to assert a new habeas claim based on *McCoy v. Louisiana*, 138 S. Ct. 1500, 1503 (2018).[3] (ECF No. 53 at 8, 15.) Thus, Magistrate Judge Aboulhosn also recommended denying Petitioner's motion for briefing schedule and certified questions as moot. (*Id.* at 15-16.) Petitioner asserts numerous objections to the PF&R. (*See* ECF Nos. 57, 58.) Some of these objections are overlapping and have been consolidated for clarity. Each is discussed below.

A. *True Rule 60(b)(6) motion*

Petitioner appears to make two arguments that his motion is a true Rule 60 motion rather than a successive habeas petition. Petitioner is misguided, though, as discussed below.

A true Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez*, 545 U.S. at 532. The test to determine whether a Rule 60(b) claim is a successive habeas petition is "relatively simple." *Id.* To start, "[i]f the Rule 60(b) motion raises a new ground for relief from the prisoner's state court conviction," 930 F.3d 587, 595 (4th Cir. 2019), or "if the motion attacks the federal court's previous resolution of a claim *on the merits*," it must be dismissed, *id*. (emphasis in original) (quoting *Gonzalez*, 545 U.S. at 532). Still, the United States Supreme Court ("Supreme Court") carved out a "narrow role" in *Gonzalez*, that allows a district court to "reopen nonmerits-based denials or dismissals of a state prisoner's federal habeas petition or claim,

---

[3] In *McCoy*, the Supreme Court of the United States held that "[t]he Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." 138 S. Ct. at 1503.

5

which resulted in no federal court having considered the merits of the claim at all," such as "failure to exhaust, procedural default, or statute-of-limitations bar." *Id.* (citing *Gonzalez*, 545 U.S. at 532).

Here, Petitioner first argues that he could not have raised his *McCoy* claim in his federal habeas petition because *McCoy* was not decided until 2018. (*See* ECF No. 57 at 2.) Petitioner also reiterates that his second state habeas counsel "abandoned" his second state habeas proceeding by failing to follow the court's order to brief the *McCoy* issue. (*Id.* at 3-4.) Thus, Petitioner seems to argue that (1) the change in decisional law and/or (2) his state habeas counsel's failure to brief the *McCoy* issue constitute(s) an "extraordinary" circumstance under Rule 60(b)(6).

However, a subsequent change in decisional law provides no basis for relief under Rule 60(b)(6). *Gonzalez,* 545 U.S. at 531; *Richardson*, 930 F.3d at 959; *Dowell*, 993 F.2d at 46. Additionally, Petitioner's argument regarding his *state* habeas counsel's failure to brief the *McCoy* issue in a second *state* habeas proceeding in 2019-2020 clearly does not attack "the integrity of [his] *federal* habeas proceeding" in 2013-2014. *See Gonzalez*, 545 U.S. at 532; *see also id.* n.5 ("[A]n attack based . . . on [a petitioner's federal] habeas counsel's omissions ordinarily does not go to the integrity of the proceedings."). Rather, the fact that Petitioner is attempting to "raise[] a new ground for relief from [his] state court conviction," *Richardson,* 930 F.3d at 595, to wit, ineffective assistance of habeas counsel, exemplifies that Petitioner's motion is not a true Rule 60(b) motion, *see Stewart v. Smith*, No. CV AMD-07-2866, 2007 WL 9758418, at *1 (D. Md. Oct. 31, 2007) (construing petitioner's Rule 60(b) motion, based on ineffective assistance of habeas counsel, as a second or successive habeas petition), *appeal dismissed* 279 F. App'x 281, 282 (4th Cir. 2008); *accord Post v. Bradshaw*, 422 F.3d 419, 424–25 (6th Cir. 2005) (construing petitioner's

6

Rule 60(b) motion, based on habeas counsel's failure to pursue discovery for which petitioner had sought and obtained district court's approval, as a second or successive habeas petition). Thus, Petitioner provides no proper basis of relief under 60(b)(6).

Second, Petitioner asserts that his motion is a true Rule 60(b) motion because one of the claims in his federal habeas petition was not decided on the merits, which falls under the *Gonzalez* exception. Specifically, Petitioner argues that his claim for a violation of the Fifth Amendment, based on double jeopardy, was dismissed because he had not exhausted his state remedies before filing his federal habeas petition.[4] (*See* ECF No. 58 at 3-4.) Yet, his double jeopardy claim was decided on the merits. (*See* ECF No. 34 at 9-13.) Specifically, the Magistrate Judge conducted a *Blockburger* analysis[5] and determined that Petitioner's ten consecutive sentences did not violate the Fifth Amendment. (*See id.* at 11-13.) Petitioner did not file any objections to this analysis, (*see* ECF Nos. 37, 39, 40), and the Court adopted the PF&R, (ECF No. 41).

The Court notes that, couched within his double jeopardy challenge, Petitioner also asserted a federal habeas claim that the evidence presented was insufficient to fulfill the statutory prerequisites, (ECF No. 2 at 5), which the Magistrate Judge determined was unexhausted, (ECF No. 34 at 13-14). Nevertheless, the Magistrate Judge provided that the test for determining the

---

[4] A federal writ of habeas corpus may not be granted to a person incarcerated pursuant to a state court judgment unless he or she has first exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1).

[5] In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the Supreme Court devised the following test to determine whether two offenses are sufficiently distinguishable to allow the imposition of multiple punishments: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* "If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. Untied States*, 420 U.S. 770, 785, n. 17 (1975). "While the [*Blockburger*] test is traditionally used to determine whether a single course of conduct violates different statutory provisions, . . . courts have noted its utility in assessing whether multiple counts of the same statutory offense are multiplicitous." *United States v. Shrader*, 675 F.3d 300, 314 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 757 (2012). "If some amount of different proof was required for each offense, then the petitioner can constitutionally be convicted." *Munday v. Ballard*, 2013 WL 3990785, * 4 (N.D. W.Va. Aug. 2, 2013); *see also McLaurin v. Ballard*, 2008 WL 4498822 (S.D. W.Va. Sept. 30, 2008).

7

sufficiency of the evidence is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt;"[6] considered the statute, statutory definitions, and evidence presented; and ultimately found that "the jury could reasonably conclude" that Petitioner was guilty beyond a reasonable doubt. (*Id.* at 15.) Again, Petitioner did not file any objections to this analysis, (*see* ECF Nos. 37, 39, 40), and the Court adopted the PF&R, (ECF No. 41). Thus, even though Petitioner's claim for insufficient evidence was unexhausted, it was still dismissed on the merits.

Accordingly, Petitioner's objections are **OVERRULED** with respect to this portion of the PF&R.

B. *New Evidence*

Next, Petitioner seems to argue that newly discovered evidence exists, warranting relief under Rule 60(b)(2). According to Petitioner, he was "exposed to C-8," which his trial counsel did not investigate. (ECF No. 58 at 2.) This new evidence would allegedly support Petitioner's *McCoy* claim because it was Petitioner's "prerogative to proceed with a diminished capacity defense, which was not done by trial counsel." (*Id.* at 3.) Petitioner also asserts that he has been found incompetent in the past, which shows that his diminished capacity defense has merit. (*See* ECF No. 57 at 5-6.)

At the outset, the Court notes that Petitioner has not made the necessary showing of the threshold requirements for a Rule 60(b) motion. Even if Petitioner's diminished capacity defense is meritorious, Petitioner does not address whether there are exceptional circumstances entitling

---

[6] *See Jackson v. Virginia*, 443 U.S. 307, 307 (1979) ("The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); *see also State v. Guthrie*, 461 S.E.2d 163 (W. Va. 1995) (adopting the analysis set forth in Jackson to determine whether the evidence was sufficient to support the jury's verdict).

8

him to relief or whether there is a lack of unfair prejudice to the opposing party. *See Dowell*, 993 F.2d at 48. Ultimately, the Court is not required "to act as an advocate for a *pro se* litigant," *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978), and declines to do so.

Further, under Rule 60(b)(2), the moving party must show (1) evidence newly discovered since the judgment was entered; (2) that due diligence on the part of the movant has been exercised; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is material; and (5) that the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended. *Patterson v. Yeager*, No. CIV.A. 2:12-1964, 2015 WL 1439407, at *3 (S.D. W. Va. Mar. 27, 2015) (citing *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir.1989)). Here, Petitioner does not address, much less make the necessary showing, that that the requirements of Rule 60(b)(2) are met. In fact, based on Petitioner's own arguments and exhibits, the Rule 60(b)(2) requirements are not met.

To start, Petitioner claims he was "exposed to C-8,"[7] which his trial counsel did not investigate. (ECF No. 58 at 2.) Petitioner attached a letter to this objection from a "C-8 Medical Monitoring Program," dated August 13, 2021, indicating that Petitioner is eligible for free medical monitoring due to a settlement in a class action. (*Id.* at 5.) According to the letter, an independent three-member scientific panel found that there is a correlation between exposure to C-8 and the following diseases: (1) pregnancy-induced hypertension, (2) kidney cancer, (3) testicular cancer, (4) thyroid disease, (5) ulcerative colitis, and (6) high cholesterol. (*Id.*)

However, even if Petitioner meets the first three requirements of Rule 60(b)(2), the fourth and fifth requirements are not satisfied. For the fourth element, evidence of Petitioner's exposure

---

[7] Perfluoroctanoic acid ("C –8") can contaminate drinking water and accumulate in people's blood. *See Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 92 (4th Cir. 2011), *cert. denied* 565 U.S. 977 (2011).

to C-8 is not material because it is not "significant or essential to the issue or matter at hand," *Fact*, *Black's Law Dictionary* (11th ed. 2019), because the letter does not state that exposure to C-8 is correlated with any psychological illnesses. Thus, for the fifth element, this evidence would not likely produce a different outcome if Petitioner's ineffective assistance of counsel claim based on his trial counsel's failure to seek a second psychological evaluation[8] were retried because it would not tend to show that Petitioner was prejudiced by his trial counsel's alleged deficiency.[9]

Next, Petitioner asserts that he has been found incompetent in the past in a psychological evaluation performed by Dr. Jane Ergood that "took place long before [his] trial," but that "the people who evaluated [him] went out of business long ago." (ECF No. 57 at 5.) Petitioner attached a summary of Dr. Ergood's psychological evaluation, which was performed when

---

[8] Petitioner argues that this evidence would support his *McCoy* claim. (ECF No. 58 at 2.) However, as discussed above, Petitioner cannot bring a *McCoy* claim until he obtains leave from the Fourth Circuit to file a second or successive application in the district court. Further Rule 60(b)(2) requires a showing that the evidence is "likely to produce a new outcome *if the case were retried*," Fed. R. Civ. P. 60(b)(2) (emphasis added), and Petitioner's *McCoy* claim was not presented at trial. Thus, the Court liberally construes this argument to also be based on Petitioner's ineffective assistance of counsel claim.

[9] In *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court annunciated a two-prong test for determining whether counsel was ineffective. Under this test, a defendant must show (1) "that counsel's performance was deficient[,]" which requires a "showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*). After overcoming the "highly deferential" level of judicial scrutiny accorded to his trial counsel, Petitioner must also show that he was prejudiced by the errors—that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* Then, in addition to this deferential standard, § 2254 petitioners making ineffective assistance claims must show that the reviewing state court applied *Strickland* unreasonably. *See Elmore v. Ozmint*, 661 F.3d 783, 856–66 (4th Cir. 2011). The Supreme Court has noted that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotations and citations omitted) (noting that "[s]urmounting *Strickland*'s high bar is never an easy task" and that "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult"). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Ultimately, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

10

Petitioner was 19 years old, as an exhibit.[10] (*See* ECF No. 57-1 at 8-9.) While Dr. Ergood determined that Petitioner *might* have certain mental illnesses, she also noted that further evaluations were needed. (*See id.* at 9.) Petitioner also attached a letter he wrote to Schwabe and Associates, PLLC[11] that appears to be dated "received" on November 1, 2021, in which Petitioner indicates that he previously "requested to be sent [his] medical records," but was sent "a form that had to be notarized," which was not possible because he was in jail. (*Id.* at 4.)

Based on this information, Petitioner cannot satisfy any of the Rule 60(b)(2) requirements. First, this evidence was not "discovered since the judgment was entered," because, as Petitioner admits, this evaluation was conducted "long before" his trial. Second, Petitioner did not exercise due diligence in trying to obtain this evidence because he did not request these medical records until after his conviction, as his letter indicates he could not get the necessary form notarized due to his imprisonment.[12] Third, because Dr. Ergood did not determine that Petitioner was incompetent, this evidence is cumulative as the original psychological examination already determined that Petitioner has mental illnesses. (*See* ECF No. 20-13 at 12.) Consequently, under the fourth and fifth elements, this evidence is not material and would not likely produce a new

---

[10] Petitioner also included a partial medical record, dated October 2, 2002 and October 23, 2002, which references some possible mental illnesses but does not indicate a treating doctor. (*See* ECF No. 57-1 at 10.)

[11] Based on his claim that that "the people who evaluated [him] went out of business long ago," (ECF No. 57 at 5), the Court understands Petitioner's argument to be that Dr. Ergood previously worked at Schwabe and Associates, PLLC.

[12] The Court notes that Petitioner also included a letter he wrote to his trial counsel, dated March 23, 2008, stating that Petitioner had "evidence [he] was going to a mental hospital right around the same time of the confession." (ECF No. 57-1 at 12.) However, it is unclear what evidence Petitioner is referencing in this letter. Based on his birthdate of October 7, 1973, (ECF No. 57-1 at 4), and Dr. Ergood's note that Petitioner was 19 years old at the time she met with him, (*id.* at 9), Petitioner met with Dr. Ergood sometime in 1992-1993. Yet, Petitioner was indicted on June 27, 2007, and convicted on March 19, 2008. (ECF No. 34 at 1.) Thus, while Petitioner may have been diligent in obtaining other medical information, his letter to trial counsel, dated March 23, 2008, does not show that Petitioner was diligent in obtaining his psychological evaluation from Dr. Ergood.

11

outcome on his ineffective assistance of counsel claim for failure to seek an independent psychological evaluation if the case were retried.

Accordingly, Petitioner's objections to the PF&R are **OVERRULED**.

C. *Successive or Initial Petition*

As discussed above, Magistrate Judge Aboulhosn recommended dismissing Petitioner's Rule 60(b) motions for lack of jurisdiction because he found Petitioner's *McCoy* claim is a new habeas claim, which would impermissibly circumvent the AEDPA's requirement that a successive habeas petition be precertified by the Fourth Circuit. (ECF No. 53 at 13.) Now, Petitioner objects, arguing that the PF&R did not address whether "his second habeas petition based off of McCoy" is "considered the [i]nitial petition" because he "timely filed" it.[13] (*See* ECF No. 57 at 5.) Thus, Petitioner seemingly concedes that he is not seeking relief under Rule 60(b) but challenges the finding that his *McCoy* claim is a *successive* habeas petition.

Although Congress did not define the phrase "second or successive" in § 2244(b)(3), "it does not simply refer to all habeas filings made second or successively in time, following an initial application." *See Banister*, 140 S. Ct. at 1705 (internal quotation marks omitted). Rather, in assessing "what qualifies as second or successive," courts should look for guidance in: (1)

---

[13] Petitioner also faulted the PF&R for not addressing whether a "[s]tructural error per se defeat[s] cause and prejudice." (ECF No. 57 at 5.) Generally, the doctrine of procedural default provides that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citations omitted). Where a defendant has procedurally defaulted an argument, he can only raise it in a collateral attack by establishing "cause and prejudice" or "actual innocence." *United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). However, Magistrate Judge Aboulhosn recommended dismissing Petitioner's *McCoy* claim based on lack of jurisdiction—not the doctrine of procedural default. Thus, the Court declines to entertain Petitioner's procedural default question.

12

"historical habeas doctrine and practice"; and (2) the "AEDPA's own purposes." *See Banister*, 140 S. Ct. at 1705-06.

First, under the historical guide, if the litigant's "later-in-time filing would have constituted an abuse of the writ, as that concept is explained in . . . [pre-AEDPA] cases . . . it is successive; if not, likely not." *Id.* at 1705 (alteration in original) (internal quotation marks and citations omitted). The doctrine of abuse of the writ "mandates dismissal of claims presented in habeas petitions if the claims were raised, or could have been raised, in an earlier petition." *Noble v. Barnett*, 24 F.3d 582, 585 (4th Cir. 1994). Second, the purpose of the AEDPA's restrictions is to "conserve judicial resources, reduc[e] piecemeal litigation, and lend[] finality to state court judgments within a reasonable time." *See Banister*, 140 S. Ct. at 1706 (internal quotation marks omitted).

Here, Defendant's *McCoy* claim would constitute an abuse of the writ. The Court notes that Defendant could not raise his *McCoy* claim in his federal habeas petition because *McCoy* was not decided until after his conviction. But, because *McCoy* cannot be applied retroactively, *Smith v. Stein*, 982 F.3d 229, 235 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2532 (2021), "the [C]ourt need only apply the constitutional standards that prevailed at the time the original proceedings took place," *Teague*, 489 U.S. at 306 (internal quotation mark omitted), which would constitute an ineffective assistance of counsel ("IAOC") claim, *see Smith*, 982 F.3d at 233.[14] To that extent,

---

[14] As the Fourth Circuit recognized, an earlier Supreme Court decision supplied the prevailing constitutional standard at the time of Petitioner's trial in May 2013:

> Prior to *McCoy*, the Supreme Court had viewed a lawyer's concession of guilt as a tactical choice that counsel could make — in the absence of her client's consent — without exceeding constitutional limitations. In *Florida v. Nixon*, the [c]ourt had determined that the Constitution does not bar counsel from conceding a capital defendant's guilt at trial "when [the] defendant, informed by counsel, neither consents nor objects." 543 U.S. 175, 178 (2004). Rejecting "a blanket rule demanding defendant's explicit consent," *Nixon* unanimously determined that such an admission

13

Petitioner's federal habeas petition included an IAOC claim based on his trial counsel's failure to seek a second psychological evaluation. (ECF No. 2 at 2.) Now, Petitioner attempts to bring a claim based on his trial counsel's "failure to pursue with [a] defense of diminished capacity." (ECF No. 51 at 3.) Although Petitioner does not offer any factual allegations in support, the Court liberally construes this claim to also be based on his trial counsel's failure to seek a second psychological evaluation.[15] Thus, because Petitioner already challenged this particular conduct of his trial counsel in his federal habeas petition, his *McCoy* claim would be an abuse of the writ.

Further, allowing Petitioner's *McCoy* claim to proceed would frustrate the statutory aims of the AEDPA. Petitioner was evaluated by a qualified forensic evaluator, and this Court already found—almost ten years ago—that there was no indication that a second psychological evaluation would have resulted in a substantially different opinion. (*See* ECF Nos. 34 at 18-20; 41 at 3; *see also Morgan*, 2013 WL 149602, at *10 ("[T]here is no evidence whatsoever to justify a second evaluation.").) As such, relitigating this issue would not conserve judicial resources, would amount to "piecemeal litigation," and could untimely disrupt the finality of the state court judgment.

Thus, both the historical habeas doctrine and practice and the statutory aims of the AEDPA demonstrate that Petitioner's *McCoy* claim constitutes a successive habeas petition.

---

was not automatically prejudicial ineffective assistance of counsel. *Id.* at 192[ ].

*Smith*, 982 F.3d at 233. Thus, as the Fourth Circuit observed, *Nixon* did not view counsel's concession of a client's guilt as structural error outside the ambit of harmlessness analysis, but rather, as an allegation regarding the ineffectiveness of counsel subject to the standards announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *See id.* at 234.

[15] To the extent Petitioner is challenging other conduct by his trial counsel, the Court is not required "to act as an advocate for a *pro se* litigant," *Gordon*, 574 F.2d at 1152, or "conjure up questions never squarely presented," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Accordingly, the Court **OVERRULES** Petitioner's objection with respect to this portion of the PF&R.

D. *Footnote 6 in Edwards v. Vannoy*

Petitioner also objects to the PF&R's reliance on the Fourth Circuit's decision in *Richardson,* which explained the test laid out by the Supreme Court in *Gonzalez* to determine whether a Rule 60(b) claim is, in reality, a successive habeas petition. (*See* ECF No. 57 at 4.) Petitioner claims that *Edwards v. Vannoy* "overrule[d]" *Richardson*, and "*McCoy* has not been resolved pursuant to [*Vannoy*] and the [s]tate [c]ourt's discretion to hear the claim." (*Id.*) Thus, according to Petitioner, he does not have to get permission from the Fourth Circuit to file a successive habeas petition. (*See id.*).

In *Vannoy*, the Supreme Court's previous holding in *Teague v. Lane*, 489 U.S. 288, 311 (1989), allowing retroactive application of new "watershed rules of criminal procedure," was completely foreclosed. *Edwards v. Vannoy*, 141 S. Ct. 1547, 1560 (2021) (holding that, without exception, "new procedural rules do not apply retroactively on federal collateral review"). The Court noted in footnote 6, though, that this ruling only applies to *federal* collateral review: "States remain free, if they choose, to retroactively apply the jury-unanimity rule as a matter of state law in state post-conviction proceedings." *Id.* at 1559 n.6. Thus, Petitioner's question is essentially as follows: if the state court were to decide Petitioner's *McCoy* claim,[16] would this Court consider it on collateral review?

While this is an interesting question, it is irrelevant in this case. To start, the procedural posture of this case differs from Petitioner's hypothetical, as the state court did not hear Petitioner's

---

[16] The *McCoy* rule is a procedural rule that is not retroactively applicable on collateral review. *See Smith*, 982 F.3d at 233, 235.

15

*McCoy* claim or rule on his Rule 60(b) motion yet. Further, although the PF&R noted that Petitioner was incorrect in claiming that *McCoy* was made retroactive to cases on collateral review, (*see* ECF No. 53 at 14), this was not the legal basis for the recommendation to dismiss Petitioner's claim. Rather, the PF&R's recommendation was based on this Court's lack of jurisdiction to hear Petitioner's successive habeas petition. (*See id.* at 13.) And, to that extent, *Vannoy* in no way overrules the AEDPA's requirement that a successive habeas petition must be precertified by the Fourth Circuit or the test to determine whether a Rule 60(b) claim is a successive habeas petition.

Accordingly, Petitioner's objection is **OVERRULED** with respect to this portion of the PF&R.

E. *Look Through Analysis*

Petitioner then argues that his claims were not properly considered because Magistrate Judge Aboulhosn did not conduct a look through analysis[17] to verify that Petitioner has a Rule 60(b)(6) motion pending in state court, that the state court ordered habeas counsel to brief the *McCoy* issue, and that habeas counsel failed to object to summary judgment. (ECF No. 57 at 8.) According to Petitioner, because he filed his second habeas petition within one year of the Supreme Court's decision in *McCoy*, and because his pending Rule 60(b) motion in state court tolls the statute of limitations, he has an obligation to exhaust his state court remedies. (*Id.*)

---

[17] The "look through" doctrine applies to federal habeas petitions. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018). The first step in a federal habeas case under AEDPA's § 2254 regime is to review the state habeas court's ruling on the claims presented. The federal court must identify the rule applied by the state court and assess the reasonableness of its application, giving the state court's rationale proper deference. *See Williams v. Stirling*, 914 F.3d 302, 311–12 (4th Cir. 2019). As the Supreme Court recently explained in *Wilson*, when "deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact within meaning of [AEDPA] when the relevant state-court decision on the merits does not come accompanied with reasons for its decision," and federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale; it should then presume that the unexplained decision adopted the same reasoning." 138 S. Ct. 1188.

16

Petitioner's argument is unclear. Nevertheless, the Court liberally construes Petitioner's argument to be that the Supreme Court's decision in *McCoy* not only established a new claim for violation of his constitutional autonomy, but in conjunction with 28 U.S.C. § 2244(d)(1)(C),[18] (*see* ECF No. 57 at 4 (arguing that this Court "must determine whether § 2244(d)(1)(C) applies to Petitioner's potential McCoy claim")), it also opened a new statutory period within which to assert this new claim. Thus, if § 2244(d)(1)(C) applied, the new statutory period would have commenced on May 14, 2018—the date of the *McCoy* decision—allowing Petitioner until May 14, 2019, to apply to the Fourth Circuit for authorization to file a second or successive habeas petition. Further, Petitioner is attempting to exhaust his state court remedies, *see* 28 U.S.C. § 2254(b)(1), with his pending state Rule 60(b) motion, which has tolled the statute of limitations, *see* 28 U.S.C. § 2244(d)(2). Ultimately, it appears that Petitioner is arguing that the statute of limitations has not expired for him to get authorization from the Fourth Circuit to file a successive habeas petition.

However, this argument fails because section 2244(d)(1)(C) is inapplicable, as *McCoy* was not made retroactive on collateral review. *Smith*, 982 F.3d at 235; 28 U.S.C. § 2244(d)(1)(C). Further, this argument is irrelevant because Petitioner did not seek authorization to file a second or successive habeas petition from the Fourth Circuit before filing the pending Rule 60(b) motion in this Court.

Accordingly, the Court **OVERRULES** Petitioner's objections to the PF&R.

---

[18] Congress placed a one-year statute of limitations on the filing of habeas petitions. 28 U.S.C. § 2244(d). As is relevant here, a petitioner must file an application for authorization to file a second or successive petition for writ of habeas corpus within one year of "the date on which the constitutional right asserted was initially recognized by the Supreme Court, *if the right has been . . . made retroactively applicable to cases on collateral review*." 28 U.S.C. § 2244(d)(1)(C) (emphasis added). The limitations period may be tolled if the applicant properly files for post-conviction relief from state court before the period has expired. 28 U.S.C. § 2244(d)(2).

*F. Certified Questions*

Last, Petitioner reasserted the questions he wants certified to the Fourth Circuit. However, Magistrate Judge Aboulhosn recommended denying Petitioner's requests for certificate of appealability because they are moot, (ECF No. 53 at 16), and Petitioner does not "direct the Court to a specific error in the magistrate's proposed findings and recommendations," *Orpiano*, 687 F.2d at 47. Consequently, Petitioner is not entitled to a *de novo* review of this issue. *Id.*

Accordingly, the Court **OVERRULES** Petitioner's objection to this portion of the PF&R.

## IV. CONCLUSION

For these reasons, the Court **OVERRULES** Petitioner's objections, (ECF Nos. 57, 58), **ADOPTS** the PF&R, (ECF No. 53), and **DISMISSES** Petitioner's Rule 60(b) motions, (ECF Nos. 50, 51), for lack of jurisdiction, and **DENIES AS MOOT** Petitioner's motions for briefing schedule and certified questions, (ECF Nos. 50, 51).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 1, 2022

THOMAS E. JOHNSTON, CHIEF JUDGE